## ERCK *v.* CHURCH.

### (*Jackson.* May 7, 1889.)

\*1. LIMITATION. *Possession by mistake.*

If a purchaser of land inclose a parcel contiguous to his purchase, by mistake, believing that he is putting his fence on the true boundary, and hold such parcel as his own for seven years, such possession is adverse, and will avail against the true owner.

Case cited and distinguished: Gates *v.* Butler, 3 Hum., 447.

Cited and approved: Pearce *v.* French, 8 Conn., 439.

2. SAME. *Connecting possessions.*

Where such possessor is succeeded in possession by another, and there is no privity of estate between the two, such as exists between ancestor and heir, or devisor and divisee, and none is created by contract, parol or written, having for its object the transfer of the possessory right, the possessions of the two cannot be connected so as to make out the period of limitation.

Cases cited and approved: Marr *v.* Gilliam, 1 Cold., 491; Graeven *v.* Devies, 31 N. W. R., 914; Fanning *v.* Willcox, 3 Day (Conn.), 258.

Cited and commented upon: 11 Hum., 464; 1 Swan, 502; 5 Sneed, 396; Same, 637; 6 Bax., 47; 4 Lea, 701; 10 Hum., 212; 73 Ill., 439.

3. SAME. *Case in judgment.*

W purchased a lot, and by mistake inclosed land that his deed did not convey, believing that he was putting his fence on the true line, and held the land thus inclosed as his own less than seven years. W sold to C the land he had purchased, following the description in his own deed, and C went into possession of the whole, and held it as his own long enough to make out the period of limitation by tacking his possession to that of W. W did not in any way undertake to transfer to C his possessory right to the parcel so held. Both were ignorant of the mistake in boundaries.

---

\* Syllabus prepared by Judge Dickinson.—REPORTPR.

Erck *v.* Church.

*Held*, That the possession of each was adverse to the true owner, but that the two possessions could not be connected to make out the period of limitation.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

Ejectment bill. Decree for complainant. Defendant appealed.

J. M. GREGORY for Complainant.

GANTT & PATTERSON for Defendant.

*\* J. M. DICKINSON, Sp. J. Complainant filed this bill September 25, 1886, to recover possession of a parcel of land in Memphis, fronting three feet and ten inches on Lauderdale Street, and five feet seven and one-half inches on Humphries Street, being three hundred and nine feet in length.

It is admitted that complainant has a good legal title, and that he has a right to recover, unless it has been defeated by the operation of the statute of limitations.

---

\* Judge J. M. Dickinson, of Nashville, was appointed by the Governor April 9th, 1889, and served until close of term, in place of Chief Justice Turney, who was absent on account of sickness.—REPORTER.

Mackall sold and deeded to Warner a lot contiguous to the parcel in dispute, fronting fifty feet on Lauderdale Street, · and the same width on Humphries Street, bounded by parallel lines. In taking possession Warner did not measure his fifty feet. Mackall, at the time Warner purchased, pointed to a group of trees, and designated one as being on the south boundary line of the lot sold. Warner fenced in his purchase, and placed his south fence along the line indicated, believing that he was inclosing the parcel purchased of Mackall and no more. He, in fact, inclosed with his fifty foot lot the parcel in dispute, and from that time continued to hold as his own the entire tract included by his fences.

Warner sold to defendant Church by deed, following the description in the deed from Mackall to him, which embraced the fifty feet, but not the parcel in dispute, and Church took possession of the whole tract as inclosed by Warner, and held it as his own.

It is admitted that Church has not held seven years, but that Warner and Church together have held more than seven years. Complainant contends that the statute of limitations has not operated for these reasons:

*First.* That Warner did not intend to inclose any ground but the fifty feet he purchased; that he took possession of and held the disputed parcel by mistake, and that, therefore, the statute was not set in motion because an essential requisite, namely, an intention to hold adversely, did not exist.

*Second.* That the periods of possession by War-
ner and Church cannot be connected, because they
are both wrong-doers, and there is no privity be-
tween them.

On the first question we are without precedent
in this State.

The case of *Gates* v. *Butler*, 3 Hum., 447, is
erroneously cited by complainant as sustaining his
contention. In that case plaintiff asserted title by
constructive possession of a large tract, a portion
of which he claimed to have held adversely for
seven years by actual possession. This possession,
if it existed, came by inclosing a small portion of
the land in the disputed grant by mistake in
placing the fence on the supposed boundary line
of a contiguous tract, held by a different title. The
proof made it most probable that the fence was on
the true boundary line. The Court said: "Under
these circumstances the Court charged that the ac-
cidental and unintended inclosure of a small part
of the land for seven years would not vest a valid
title, etc. In this we think there was no error,
and we affirm the judgment."

There is a wide difference between a plaintiff
actively setting up a title, claimed to be perfected
by accidental possession of a portion of land em-
braced in an instrument giving a color of title,
and one defending by a possessory right to the
extent of his actual inclosures.

A Court would be slow to assist one who, though
having a color of title to a tract of land, by mis-

take, and without intention to assert his title, had inclosed an insignificant portion of the tract, and afterward, on discovering his accidental holding, sought to extend, by construction, this possession, so as to invest himself with an indefeasable title to the whole, and thus convert the possession, which might be a shield for defense commensurate with his actual occupancy, into a weapon of attack ' as far reaching as the limits embraced in his deed. The case of *Gates* v. *Butler* decided that such possession could not avail for such a purpose and nothing more.

The Courts of the different States are in conflict upon the question we are considering. In Wood on Limitation of Actions the opposing rules are stated, and the cases sustaining them respectively are cited. Sec. 263.

In *Pearce* v. *French*, 8 Conn., 439, the defendant occupied lands not embraced in his deed, under the mistaken idea that they were included in his deed. There was no evidence that he intended to occupy such lands adversely, except such as might be afforded by the fact that he occupied and used them as his own. The Court held that he thereby acquired title to the land by possession.

Under the second section of the Act of 1819, "no person, or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

If one enter upon the land of another, whether

with intent to disseize, or mistaking it for his own, a right of action accrues at once to the owner. If the one so entering holds and claims the land as his own for seven years continuously, then certainly the conditions of the statute will have been fulfilled. The right of action of the true owner accrues at once upon the entry, and is not dependent upon the state of mind or the knowledge as to boundary lines possessed by the one entering. If the fact of knowledge or intent were an essential element of disseizin, then the real owner would have no right of action against one who had entered by mistake, until after he was convinced of his mistake, and then, with knowledge of his error, continued to hold, thus altering the character of his possession, and technically ousting the true owner, by a change of mental condition.

Such a contention, under our statute, is not tenable. The right of action accrues when one takes possession as his own, whether by mistake or otherwise, and the right of recovery is barred in seven years from such entry if the possession be unbroken.

The possession and adverse holding are notice to the world, and to the true owner, to the extent of the occupancy, and the visible physical fact should not be overcome by mere refinements based upon mental status. To hold otherwise would be to place the intentional wrong-doer in a better position than one who had innocently entered upon the lands of another, and expended his means in good faith. The intentional land-grabber who, with

premeditated wrong, took possession of lands, would be protected, while one who, by error of surveyor or as to natural monuments, innocently and by mistake entered on the wrong land and improved it in good faith, would not be protected, if he held twice seven years. A mistake of a surveyor in locating a city lot for valuable improvements might cause one to place a wall a few inches beyond the actual line called for by his deed, and no length of possession short of the time required for a presumption of a grant would quiet the possessory right.

It is manifest, from the proof in this cause, that Warner and Church intended to hold all the ground embraced by their fences as their own. Such possession was adverse under our statute, whether it was by mistake as to the real boundaries or not, and if continued for seven years it would bar an action for recovery of the land so held.

The next question for consideration is, whether, upon the facts in this case, the bar was complete. It is admitted that Church has not held for seven years, and that to make out his defense he must tack his possession to that of Warner

The deed from Warner to Church does not convey the land in controversy. There is no evidence that Warner, by deed or otherwise, undertook to transfer to Church his possessory right to this ground. There is no connection between them in respect to it, except the fact that Church took

possession of it, along with the fifty feet deeded
to him by Warner.

Can the two possessions be connected so as to
make out the seven years? The declaration, that
the successive possessions of trespassers cannot be
united for the reason that there can be no privity
between wrong-doers, has appeared from time to
time in our reports. In *Moffitt* v. *McDonald*, a
case of holding slaves, the period of adverse pos-
session being fully made out without connecting
different possessions, Judge Green (11 Hum., 464)
says, "It is a well-settled principle, alike applicable
to real and personal property, that between suc-
cessive wrong-doers, having no title, there can be
no privity, and therefore their possessions cannot
be united so as to make out the time required to
form the bar of the statute of limitations." The
proposition stated was not involved in the case.

*Wells* v. *Ragland*, 1 Swan., 502, and *Hobbs* v.
*Ballard*, 5 Sneed., 396, were both cases of adverse
holding of slaves, and curiously enough, in each,
not the defendant, but the complainants sought to
connect the several possessions, so as to avoid the
effect of the statute of limitations, inasmuch as all
of the complainants were minors during the first
possession, and, under the rule in our State, the
bar would not have became complete until all of
them had reached majority, whereas, when the
second possession began, one was of age, thus
barring all unless suits were brought within the
time fixed by the statute for the one who was

free from disability. Though the successive possessions were connected by sale and transfer, the complainants sought in vain to tack them and make them one, the court holding that each new possession was a conversion, and that there could be no privity between wrong-doers.

In *Clark* v. *Chase*, 5 Sneed, 637, the doctrine before stated is broadly asserted, but it was not called for by the case. Judge Caruthers says, "The complainants' counsel contend that the case is analogous to successive possessions of naked trespassers or wrong-doers, which it has been often held by this Court cannot be united in order to make out the time required by the statute of limitations for the bar under the Act of 1819." He, however, cites no cases adjudicating this question.

In *Baker* v. *Hale*, 6 Baxt., 47, the Court expressly held that the successive possessors were not trespassers, the first having gone in by parol contract to purchase and having transferred by deed his right to the second. Judge Nicholson, however, in his opinion, says: "It is settled by repeated adjudications that the successive possessions of trespassers cannot be so connected as to make up the bar of seven years under the second section of the Act of 1819, and for the reason that there can be no privity between wrong-doers," citing three of the cases above commented on, and *Vance* v. *Fisher*, 10 Hum., 213.

In *Nelson* v. *Trigg*, 4 Lea, 701, although the

facts and the decision of the case did not call for it, the principle is stated as follows:

"A naked trespasser, without color of title, cannot transmit his right to a successor so as to enable the latter to couple the two possessions to make out the bar of seven years." This doctrine, so often reiterated as an established and familiar principle of our land law, is not directly adjudicated by any case in our State which has been called to our attention.

In *Vance* v. *Fisher*, 10 Hum., 212, the defendant undertook to connect his possession with that of a prior possessor, which the Court denied him, on the ground that he had received the possession from the administrator of the first possessor, and that the administrator having no control over his decedent's land, had no right to transmit the possession so as to connect the two, and that for this reason the defendant "must be regarded as being in possession of the land not in privity with the previous possessor, but as a wrong-doer who cannot couple his possession with that of a prior possessor." It would seem inferentially that the conclusion would have been different had the possession been passed by the first possessor himself. This, however, would not have been a precedent for the case under consideration, inasmuch as the first possessor in the 10 Hum. case had entered under a contract by which one Orr had sold him the land with covenant to convey, which constituted a color of title.

A leading case in this State, and one frequently cited by judges and text-writers, is *Marr* v. *Gilliam*, 1 Cold., 491. The point, actually decided, was that the possession of one who had entered lawfully upon land by deed as a tenant in common, but who subsequently began to hold adversely to the other tenants in common, might be connected with that of his heirs so as to make out the period of the statute, because there is a privity of estate between ancestor and heir, but that the wife of such first possessor could not connect her possession with his because there was no such privity between husband and wife. Judge Wright (page 504) thus states the law, "Separate successive disseizins do not aid one another, where several persons successively enter on land as disseizors, without any conveyance from one to another, or any privity of estate between them, other than that derived from the mere possession of the estate. Their several consecutive possessions cannot be tacked, so as to make a continuity of disseizins of sufficient length of time to bar the true owners of their right of entry."

On pages 509–10 Judge Wright discusses the cases of *Wallace* v. *Hannum*, 1 Hum., 443; *Norris* v. *Ellis*, 7 Hum., 463; and *Crutinger* v. *Catron*, 10 Hum., 24, and criticises as *dicta* the statements in those opinions, that a trespasser by mere possession, without color of titles, acquires no right that is either alienable or descendible. As previously stated, Judge Nicholson, in *Baker* v. *Hale*,

6 Baxt., 48, says: "It is settled by repeated ad-
judications in this State that the successive pos-
sessions of trespassers cannot be so connected as
to make up the bar of seven years under the
second section of the Act of 1819, and for the
reason that there can be no privity between wrong-
doers." In this case he reviews *Marr* v. *Gilliam*.
On page · 51 he apparently approves the statement
of the law as made by Judge Wright, to the
effect that successive possessions of trespassers may
be tacked together where the successive possessors
hold the land as their own, and there is a privity
of estate between them. On the next page, how-
ever, he says that the possessory right of a naked
trespasser is not descendible or alienable. This is
clearly in conflict with the position of Judge
Wright. In neither case, however, was the law,
as stated, called for. Thus we have conflicting
declarations of the law from eminent judges, but
none of them are stamped with the authority of
an adjudged case.

In Wait's Action and Defences the following is
stated to be the law: "When there are several
successive adverse occupants of real property, the
last one may tack the possession of his predecessor
to his so as to make a continuous adverse pos-
session for the time required by the statute, pro-
vided there is a privity of possession between such
occupants; and in case of an actual adverse pos-
session, such privity arises from a parol bargain
and sale of the possession of the premises followed

by delivery thereof, as well as by a formal con-
veyance from one occupant to the other." Vol. 6,
page 455, and the cases there cited.

In *Weber* v. *Anderson*, 73 Ill., 439, the facts
presented a case involving almost every essential
element embodied in the case under consideration.
The instruction in the lower court to the jury
was that the rights acquired by the first possessor
could not be transmitted except by deed. The
case was reversed, the superior court saying that
there was "parol proof" showing the Plank Road
Company transferred "their possessions over to
him" (the defendant). It was held that parol
proof was sufficient to show the transfer of pos-
session, and. that it could be tacked to the subse-
quent holding. It does not clearly appear in that
case whether or not there was an actual transfer
of a possessory right by parol. The language of
the Court would admit of this construction. If,
however, the possession merely passed as in the
case under consideration, *sub silentio*, without any
knowledge by either party that there was such a
possessory right, and that it was being transferred,
then the case is an extreme one.

The opposite conclusion was reached under a
similar state of facts by the Supreme Court of
Wisconsin in *Graeven* v. *Devies*, 31 N. W. R., 914.

In *Fanning* v. *Willcox*, 3 Day (Conn.), 258, the
rule (as quoted by Wood on Limitations, page 582,
note) is thus stated: "Doubtless the possessions
must be connected and continuous, so that the
possession of the true owner shall not constructively

intervene between them; but such continuity and connection may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact."

This is in substantial accord with the doctrine as stated by Judge Wright in *Marr* v. *Gilliam,* which is approved by us. There must be a privity of estate connecting the successive possessions, and a transfer of the possessory right, by grant, inheritance, devise, or contract, verbal or written. The mere fact of successive possessions appearing, and nothing more, will not constitute such privity. If the contrary rule were adopted, then any independent trespasser entering upon land simultaneously with the abandonment of it by a prior trespasser could connect the two possessions, without any pretence of a privity of estate, by merely showing that there had been no actual *hiatus* between the possessions.

The deed to Church does not embrace the land in dispute, and there is no evidence that Warner undertook to transfer to Church his possessory right to it. On the contrary, it is shown that he was ignorant of having such right. There is no privity of estate between them in respect to this land. Warner both acquired and abandoned his possessory right in ignorance of its existence. The entry by Church was a new disseizin, and a new period of limitation began.

The decree of the Chancellor is affirmed.