W. A. C. Buchanan, Complainant, Appellee, *v.* W. M. Nixon, Defendant, Appellant.

(*Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931.

Shepherd & Carden, for complainant, appellee.

T. O. Trotter, Jr., and Joe Brown, for defendant, appellant.

Mr. Justice Chambliss delivered the opinion of the Court.

The pleadings in this cause present a controversy over the ownership of a narrow strip of land, some twenty-one inches in width, a part of a lot fronting east fifty feet on Georgia Avenue, in the City of Chattanooga, the record title to which has been in Nixon for many years. Mrs. Buchanan purchased in 1910 a lot on the corner of Georgia Avenue and Payne Streets, fronting north thirty-two feet on Payne Street, and extending south along Georgia Avenue, according to the deed, 100-5/12 feet, its rear or south line being the north line of the Nixon lot. The Chancellor found, and the record clearly sustains him, that the record title of the respective parties is as described.

However, it appears that in the fall of 1919 Mrs. Buchanan erected a garage at the southwest corner of her lot, fronting on Payne Street, and placed her south wall twenty-one inches over on the Nixon lot; that Nixon did not know of this encroachment until shortly before this litigation began, in August, 1925, which was within

seven years. If this were all Nixon's rights would be clear. But Mrs. Buchanan says that she placed the south wall of her garage on the line of an old fence which had been erected before she purchased, and which had been maintained and recognized as her true south line during her ownership and occupancy. This is disputed by Nixon, contending, first, that this old fence was not so located, and, second, that, if so located, it was of so temporary, irregular and unstable a character as not to constitute under the rule an adverse boundary; and, third, that this fence was so placed by tenants of Nixon within his line by inadvertence and without any intention to erect a permanent line fence, or set up a boundary, and in ignorance of its location south of the true line; that such an encroachment wholly lacks that intent which is an essential element of adverse possession.

The Chancellor's holding was, substantially concurred in by the Court of Appeals, that the encroachment was accidental and unintentional and without knowledge of either party, Mrs. Buchanan upon and after her purchase acting in the belief that the location of the old fence was her true south boundary, and Nixon being unaware of the encroachment until the lines were surveyed shortly before this suit was begun, but both courts held that the Buchanan "possession was adverse under the authority of *Erck* v. *Church,* 87 Tenn., 575. Nixon appealed and the Court of Appeals has affirmed the Chancellor, following *Erck* v. *Church* and citing, also, *Williams* v. *Hewitt,* 128 Tenn., 689. Writs of *certiorari* have been granted and argument heard by this Court.

The Erck case was decided in 1889, the opinion being by Special Judge DICKINSON. It was re-affirmed in 1913 in *Williams* v. *Hewitt, supra,* to be "followed in cases

similar in their facts." The opinion in the Williams case cited "probably all of our decisions upon the question involved," being that of the effect of accidental possession, and apparently conceded that *Erck* v. *Church, supra,* was in conflict with the great body of the law in this State. See full citation of the Tennessee cases in which this question of accidental possession has been considered on page 691 of *Williams* v. *Hewitt, supra,* beginning with the leading case of *Kirkman* v. *Brown,* 93 Tenn., 476. It has been conceded in the Erck case opinion that the general rule was contrary to the holding announced.

It is impossible to read the opinion of Mr. Justice LANSDEN in the Williams case without being impressed that he followed the Erck case only because it had been "recognized as a ruling case *upon its facts* since the date of its decision," that it was on this authority alone that the Court felt that it *"must hold* that the complainant's suit is barred." (Italics ours.) It will be observed that Mr. Justice LANSDEN emphasized by repetition the limitation of the Erck decision to its particular facts. This evident indisposition to extend the rule adopted further away from what is unquestionably the majority rule, is now concurred in.

It is proper in this connection to observe that the binding authority of the Erck case is affected somewhat by the fact that the opinion expressed on this particular question was not necessary to a decision of that case, it appearing that the case was affirmed upon an independent question of law, fully reviewed, namely, that the two possessions shown could not be so connected as to make out the period of limitation. It might be plausibly argued, therefore, that the pronouncement on the question

of accidental and unintentional possession was in the nature of an opinion only, rather than a decision.

However, without overruling the Erck case, but applying the rule of strict limitation of that holding to .its particular facts, it is apparent that a distinction based on a substantial difference appears here.

While in both the Erck and Williams cases the possessory claims grew out of accidental and unintentional mislocation of the fences, so as to include strips of adjoining lots, it was conceded that the original location of the fences was by the *possessory claimants,* in the present case it fairly appears that the original erection of what was, as time passed, improved into a substantial fence structure by Mrs. Buchanan, and finally her garage wall, was by a *tenant of Nixon,* for temporary enclosure of his garden, and without any thought or purpose of fixing a property line.

Intent is too generally recognized as an essential element of adverse possession to be disregarded.

In Bouvier's Dictionary (Rawle's Third Revision), Vol. 1, pages 152, 153, it is said, "The intention must be manifest," citing a number of cases. Also, "But if by mistake one oversteps his bounds and encroaches upon his neighbor's lands, not knowing the location of the controlling line and intending to claim no more than he really is entitled to possess, his possession is not adverse, and will not give him title no matter how long he actually holds it," citing numerous cases. And, in such a case, "the intention is not absolute, but provisional, and the possession is not adverse," citing authorities. These are merely statements of the general rule. In Volume 2 of the same authority, pages 2016, 2017, it is said, "the possession must be *adverse.* If it

be . . . by mistake;" . . . or if it be "unintentional . . . it does not avail to bar the statute." And see to the same effect 2 Corpus Juris, page 139, where the text is supported by citation of cases from a great number of jurisdictions.

Also, as bearing on suggested controversies as to details of fact, it should be borne in mind that, "the burden of proving adverse possession is in all cases upon him who sets it up and relies on it;" and that "all presumptions are in favor of the legal holder," 2 C. J., p. 262, citing cases from all jurisdictions, including this State. And to like effect is Bouvier, *supra,* that, "evidence of adverse possession must be strictly construed and every presumption is in favor of the true owner," conceded in this case to be Nixon.

In the class of cases under consideration this essential intent has several supporting phases. First, we have an erection on a line over the true title boundary; next, a purpose to erect a fixed or permanent partition, with a purpose to treat this erection as a location of a boundary, and, then, a conscious assertion of a claim to the land enclosed against the adjoining owner and all others. This latter appears to be necessary to supply the adverse element of the holding, the essential element of intent to take and hold adversely.

Apparently, in the Erck case, and its few supporting authorities, the location *by the adverse claimant* of the erection of a fence with permanent characteristics, on a given line, although by mistake, over the true boundary, is treated as evidencing the necessary intent to make the claim, and start the running of the statute. This basis of fact appeared in the Erck case, and again in *Williams* v. *Hewitt, supra.* It may be plausibly said that when

an owner openly enters on a line over his true boundary, although by mistake assuming it to be the true line, and there erects a substantial enclosing structure, he by this affirmative act proclaims a purpose to fix his boundary line, whether an encroachment or not, and an intention to hold against all the world. This evidence of a general purpose may be accepted as supplying the essential of intent to hold adversely.

The statute (second section of the Act of 1819), which cuts off the right to recover lands unless suit is brought "within seven years after the right of action has accrued," may well be held to begin to run, as set forth in the Erck opinion, from the time one enters and erects a fence over on an adjoining owner's land, although by mistake as to the true line; but this rule may not apply when the reverse is true, that is, where the erection is made on his own land by the adjoining owner within his true boundary without thought of fixing the line. If "A" erects a wall or fence across or along his lot on any given line, whether one or twenty feet from the true boundary, without any purpose to fix a boundary line, it could hardly be insisted that he thereby sets in motion the running of the statute in favor of the adjoining owner to that part of "A's" land lying outside of his improvement.

Should, then, the rule be extended to embrace a case where the erection in the first instance was not by the adverse claimant at all, but by the owner of the adjoining lot for usages of his own, not only in ignorance of the true line, but without purpose to set up a line? Where under these facts does any evidence of an adverse intent, a purpose to claim adversely, appear? Every required element of fact is wanting. Take the instant case. Con-

ceding, which is in doubt, that the original erection was of a substantial or permanent nature, it was clearly without any purpose to erect a boundary line, and, quite obviously, without any purpose to establish boundary rights in favor of the adverse claimant. Here the record is clear that, while the Buchanans, in ignorance of their true south line, assumed the erection they found near this line to be on the boundary line, and treated it as such from the time of their purchase sometime before the commencement of this suit, they had no purpose or intent to encroach upon and take from their neighbor his land. There was no intent at any time on their part to withhold from him adversely any part of *his* land, and it was in this attitude of mind that they contributed to the upkeep of this old fence. Can this adoption by them, and it was certainly no more, of this old fence, which had been erected years before by their neighbor, or his tenant, over on his lot, be given the effect of an affirmation or declaration of a purpose to take and hold adversely this strip? This would require that we go beyond the Erck and Williams cases above cited and discard the last vestige remaining of the essentiality of intent in the application of the doctrine of adverse possession. We cannot extend the law of accidental possession to this length.

The view we have taken is not only not in conflict with *Erck* v. *Church, supra,* when the difference in the facts is considered, but it is supported in principle, as already shown, by a long line of authorities in this State and elsewhere.

The result we reach appears to be not only technically legal, but equitable and just. Mrs. Buchanan retains the exact footage of land which she purchased and paid

for, while Nixon is permitted to retain only that footage which he years before had purchased and paid for. This accident and mistake is rectified and neither party suffers injury.

The decree of the Court of Appeals will be reversed and the judgment will be entered for Nixon under his cross-bill.