## GIBSON et ux. v. SHULAR.—194 S. W. (2d) 865.

Eastern Section. March 16, 1946.

Petition for Certiorari denied by Supreme Court, June 1, 1946.

O. M. Connatser, of Sevierville, for appellant.

R. L. Ogle, of Sevierville, for appellee.

BURNETT, J. The original bill in this cause was filed by Doyle Gibson and wife, Ruby Gibson, against Murphy Shular, for the purpose of enjoining the defendant from committing trespass on the land described in the bill, and to require the defendant to return to the plaintiffs logs taken from said land and to recover for the damage done said logs which the defendant had removed. An amendment to the bill was also filed asserting that this was also a boundary line dispute and under this theory the boundary line was asked to be fixed pursuant to Code, section 10369.

The above mentioned amended bill was filed after the defendant had answered the original bill. In this answer it was averred:

"That the disputed area is a space between or inside of defendant's fence where he had had complete control and adverse possession through his chain of title for more than 25 years. He states further that he did not know complainant was even claiming this strip until he came over on him and cut some pine timber. He states further that the fence has been the dividing line between them for more than 25 years; that the parties owning these two different tracts of land have always recognized the fence as being the line, . . . etc."

After the case was fully developed by the parties the Chancellor held that the contention of the defendant was established by the preponderance of the proof. He fixed the fence as the line between the parties and rendered a small judgment against the complainants for the logs cut and marketed from the disputed area by the complainants.

This record presents the following facts: The parties hereto own adjoining boundaries of land—the complainants 47 acres and the defendants 51 acres. The complainants bought their land in 1940. The defendant bought his land in 1938. The respective deeds describe the lands by metes and bounds. The calls of the respective deeds where the properties join are almost identical. Over twenty years before the defendant purchased his land there was an old rail fence between these lands. Some years before his purchase this rail fence burned and was then replaced with a wire fence built where the rail fence was. There was evidence of this old rail fence at the time of taking proof herein. This fence was not on the line as shown by the respective deeds. At points it was several feet over on the complainants' land. It was in this area that the complainants cut some trees and while they were on the ground the defendant hauled them away. On the filing of this suit an injunctive order was issued requiring the defendant to return these logs to the complainants. During the pendency of the cause below the complainants sold these logs.

The wire fence was built by a brother of the defendant about five or six years before this suit was filed. This brother was a son-in-law of the former owner of the complainants' land. He was merely building the wire fence where the rail fence had been. There is not the slightest intimation of any intention on the part of any one to build the fence over on the other's land. There is likewise no intimation of any intention that the rail fence was built on another's land. The great weight of the proof is that the present adjoining owners and their predecessors in title had considered this fence rail and wire as their boundary line. The first suggestion of a contrary feeling was shortly before this law suit was started

—the fence had been considered the line for more than twenty years before any contrary knowledge or feeling was known.

The complainants rely on the well established rule as enunciated in Buchanan v. Nixon, 163 Tenn. 364, 43 S. W. (2d) 380, 80 A. L. R. 151, that:

(1) "Intent is an essential element of adverse possession."

(2) "The burden of proving adverse possession is upon him who relies on it, evidence of adverse possession being strictly construed and every presumption being in favor of the true owner."

(3) "Where an owner of land erects a fence for uses of his own, in ignorance of the true boundary line and without purpose to set up a line, in such manner that a small portion of his land is beyond the fence with the land of an adjoining owner, such action does not create an adverse possession by the adjoining landowner with whose land the small strip was included and does not set in motion the statute of limitations in his favor."

The Buchanan case differs from the case before us in the following particulars:

(a) The wire fence was built where an old rail fence had been for more than twenty years and which was supposed to be the line. The predecessors in title of the parties had so treated it by cultivating up to the fence in places and mutually repairing the fence.

(b) There is no showing that the fence was inadvertently built in the wrong place—the proof is that the wire fence was built on what was supposed to be the line where the old rail fence had been.

The defendant takes the position that he and his predecessors in title had held "actual possession" of the land in dispute for over twenty years and that therefore

they acquired title through the presumption of a grant. The defendant relies on Ferguson v. Prince, 136 Tenn. 543, 190 S. W. 548. In this case Judge Neil, at page 556 of 136 Tenn., at page 552 of 190 S. W., says:

"We shall next consider whether he is protected by the presumption of a grant. The doctrine on which this presumption rests is that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed. The reasons underlying the rule are variously stated. Sometimes it is said that such long possession furnishes an inference of fact that such muniment of title actually existed, which in course of time had been lost or in some manner unintentionally destroyed. Other cases in effect hold that the presumption is a flat presumption of law intended for the repose of society. But, whichever be the true theory, the presumption undoubtedly exists."

■ ■ It seems to us that the proper rule to apply to this type of case as presented by the facts herein and one which commends itself to justice and good sense is as stated by the annotator in 80 A. L. R. at page 157, where he says:

"The solution of this difficulty, and the better rule on the subject, is embodied in the doctrine that, in the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of the land are presumed to be adverse, it is not necessary to show an intention to hold and claim the property in spite of the fact that the legal title may be in another. The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to the boundary, and hence the oc-

cupant has no actual intention to claim adversely to anyone, as where such an intention exists. And, in the absence of anything showing that he holds in subservience to the true owner, such possession must be held adverse. When a person goes into possession of land under a deed, he regards himself as the owner of specific land, of the particular ground which he sees with his eyes and furrows with his plow. His ownership, in his own mind, is not of an abstract parcel described by metes and bounds, or of a certain number of acres, but of particular land. The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own, and does not recognize or accede to any superior title.''

For the reasons above set forth the decree of the Chancellor must be affirmed with costs.