# PEOPLES v. HAGAMAN et al.—215 S. W. (2d) 827.

Eastern Section. March 9, 1948.

Petition for Certiorari denied by Supreme Court, December 12, 1948.

Ernest King, of Bristol, for appellant.

J. D. Baumgardner and M. Paul Moody, both of Bristol, and Geo. N. Barnes, of Johnson City, for appellees.

McAMIS, J. This case involves a strip of land ap-. proximately 4 feet in width along a driveway between Lots 24 and 25 in Block 59 of the Fairmount Addition on Maryland Avenue in Bristol.

The Chancellor held that the strip in controversy fell within the boundaries of Lot 25 owned by complainant; that defendants, as the owners of Lot 24, therefore had no color of title to the disputed strip but that they had used the driveway with its encroachment on complainant's lot for more than seven years openly, adversely and notoriously and that complainant's suit to oust them of their possessory rights is barred by Code Section 8584. The complainant appeals insisting by appropriate assignments that the Chancellor erred in sustaining the defense of seven years adverse possession because (a) the statute of limitations applied was not specially pleaded as required, (b) if properly pleaded, the proof fails to sustain the claim of adverse possession, (c) there is a fatal gap between the possession of the present owners of Lot 24 and that of a former owner and, (d) two feet at the rear end of the strip, according to defendants' own proof, has been in the possession of defendants and their predecessors in title for less than 7 years.

Complainant purchased Lot 25 on March 14, 1946. Upon discovering that defendants' driveway and garage were located approximately 4 feet across the line and upon his property, he filed the bill in this case to have the line established and the encroachments removed. The defendant, Mrs. Jane Hagaman, purchased Lot 24 on November 22, 1927, and has since lived continuously in a small house on the property. However, the record shows that on May 11, 1945 she conveyed the property to three of her children who are named as codefendants in the present suit and who now hold under her deed still unrecorded.

Defendants filed a joint answer asserting title to the disputed strip and also relying upon adverse possession under Section 3, of their answer as follows:

"Defendants aver that they and those through whom they claim have been in possession of Lot 24, and the present established lines of same under color of title, and by title and by right of possessions for more than 21 years. Therefore, they would take same by statute of limitations of 7 years."

It is now insisted, apparently for the first time, that this language is not sufficient to constitute a special plea of 7 years adverse possession without color of title and, from this construction of the answer, it is argued that, since the Chancellor held that defendants have no color of title, there is no sufficient pleading to support the decree.

It is well settled, as defendants concede, that where the defense is merely of a possessory right unaided by title or color of title the defense of 7 years adverse possession must be specially pleaded either in the answer or by separate pleading. Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 182 135 S. W. 785.

While it is not necessary to plead the exact language of the statute, the defense should be expressly pleaded in language sufficient to remove any reasonable doubt that the pleader is relying upon his possessory rights.

In the plea here under consideration the pleader, in effect, asserts that defendants and those through whom they claim have been in possession of Lot 24 to the present established lines both by virtue of their title and "by right of possession for more than 21 years". Defendants' rights are then set up under the statute of limitations of 7 years. It is true we have two statutes of limitations of 7 years, one requiring a color of title and the other, the one here relied upon, based purely upon adverse possession without benefit of title. But the language used in the pleading under consideration does not exclude a defense of 7 years adverse possession based purely upon an adverse holding without title.

While the defense of the statute might have been made with greater clarity and a different conclusion might be reached if complainant had taken the position in the Chancery Court that he now takes in this court, both the opinion and the decree of the Chancellor show clearly that he treated the answer as raising a defense under Code Section 8584 and, now that it is too late for defendants to amend, we think all doubts as to the sufficiency of the plea should be resolved in defendants' favor. We therefore hold the plea sufficient at the present stage of the case, it appearing that the issue of adverse possession was fully developed in the taking of proof.

We are unable to say that the evidence preponderates against the Chancellor's finding that approximately 4 feet of the driveway and garage had been used by defendants and their predecessors in title for more than 7 years before the filing of the bill. The proof is undis-

puted that before the Hagamans purchased Lot 24 the boundaries as pointed out to them by a former owner included the strip in controversy and that they believed in good faith that they owned to the limits of the drivway and garage.

The rule is that where a purchaser of land accidentally or by mistake encloses a contiguous strip, believing he is placing the fence on the boundary, and holds the enclosed strip for 7 years, his possession is adverse, and will avail against the true owner. Erck v. Church, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641; Williams v. Hewitt, 128 Tenn. 689, 164 S. W. 1198.

In the last of these cases both Erck v. Church, as limited to its own particular facts, and the soundness of the rule followed in the earlier case of Kirkman v. Brown, 93 Tenn. 476, 27 S. W. 709 were reaffirmed. The distinction between Erck v. Church and Kirkman v. Brown lies in the fact that in the former the defendant relied upon his possessions only to the extent of his actual holdings while in the latter an accidental and unintentional enclosure of a small portion of a contiguous boundary was set up as perfecting title to a much larger boundary under color of title. This distinction seems clearly to have been carried out in the last paragraph of the opinion in Williams v. Hewitt, supra [128 Tenn. 689, 164 S. W. 1199] where the court said: ''Without questioning the authority of Erck v. Church, we desire to reaffirm the soundness of Kirkman v. Brown and the other cases cited, and which comprise the body of the law in this state upon the effect of a accidental possession. Erck v. Church is reaffirmed, and will be followed in cases similar in their facts, in so far as it holds that an actual inclosure of lands, although taken and held by accident or mistake, if maintained for

a period of more than seven years, will bar an action of ejectment under the second section of the act of 1819.''

The distinction between these cases seems to have been overlooked in the later case of Buchanan v. Nixon, 163 Tenn. 364, 43 S. W. (2d) 380, 80 A. L. R. 151, relied upon by complainant, in the criticism there found of Erck v. Church; but, despite the criticism, the opinion is careful to point out that there was no intention to overrule the holding in Erck v. Church. It was also pointed out that the conclusion reached was not in conflict with the earlier cases because the owner had himself constructed the fence cutting off a strip of his property.

As according in principle with the holding in Erck v. Church and Williams v. Hewitt, see Gibson v. Shular, 29 Tenn. App.—,194 S. W. (2d) 865, certiorari denied by the Supreme Court June 1, 1946, and for the general rule in other jurisdictions see 2 C. J. S., Adverse Possession, sec. 84, Possession under Mistake, page 632.

█ As the Chancellor held, the construction of a garage and the grading and using of a well defined driveway are at least as effective in giving notice to the true owner of an adverse use of his property as the construction of a fence. It is not essential that defendants were challenged during the 7 years adverse possession and their rights maintained against the claim of the true owner. Gibson et ux. v. Shular, 29 Tenn. App. —, 194 S. W. (2d) 865, cited supra. The open and apparent use of the property inconsistent with possession by the true owner was notice to the world that the claim was adverse. Bensdorff v. Uihlein et al., 132 Tenn. 193, 177 S. W. 481, 2 A. L. R. 1364.

Whether there was a fatal gap between the possession of the present title holders and the possessions of their predecessors depends upon the effect of the conveyance

of the property by Mrs. Jane Hagaman to her three children on August 11, 1945.

■ The general rule that successive adverse possessions cannot be tacked unless the possessions are connectedby some form of legal privity was applied in Erck v. Church, supra, and Ferguson v. Prince, 136 Tenn. 543, 190 S. W. 548. However, the rule is subject to exceptions. In Rembert v. Edmondson, 99 Tenn. 15, 41 S. W. 935, 63 Am. St. Rep. 819, a parol understanding that a strip on the rear of a lot conveyed by deed would go with the lot to the extent the grantor had any title to convey was held to supply the necessary privity although the strip adjoining the lot conveyed was not within the calls of the deed. See also Tuggle v. Southern Railway Co., 140 Tenn. 275, 204 S. W. 857; Mercy v. Miller, 25 Tenn. App. 621, 166 S. W. (2d) 628.

■ A deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of land not described and uses it in connection with that conveyed. Erck v. Church, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641; Ferguson v. Prince, 136 Tenn. 543, 190 S. W. 548. However:

"This rule is very sharply limited; and while broader language may be found in some cases, it is apparently applicable to those cases only wherein the deed itself is relied on solely to create privity, and there is no circumstance showing an intent to transfer the possession of any property beyond the calls of the deed." I Am. Jur., 883, Adverse Possession, Section 156.

In the next succeeding section (Ib.) the text continues: "As the result of the doctrine, supported by many cases, that a transfer of the possession of property sufficient to

create privity of possession between successive occupants may be made by parol or implied from circumstances, it is held that if, in connection with the conveyances of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor, but not covered by the deed, there is created such a privity that the grantee is entitled to tack the period of the grantor's occupancy to his own in establishing title by adverse possession to the land not conveyed. Under these circumstances, it is not the deed which creates privity, but the transfer of possession found from facts resting in parol.''

The above seems to have been taken literally from a statement appearing in 46 A. L. R. 795 where the editor cites, as supporting his statement, St. Louis Southwestern R. Co. v. Mulkey, 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913c, 1339; Rich v. Naffziger, 255 Ill. 98, 99 N. E. 341. In the appended notes may be found numerous cases. A number of these appear to be in conflict with Erck v. Church and Ferguson v. Prince, supra, to the extent they stand for the rule that where the land adversely held is included in the same enclosure with the land owned and conveyed by the grantor the mere taking of possession by the grantee of the entire enclosed area unaided by other circumstances creates a privity with the grantor as to the protion not conveyed.

However, to the extent these cases indicate the trend of modern decisions and involve circumstances reflecting upon the intention of the parties, a question not considered in our own cases, it is proper to note that most, if not all, of the cases digested support the view of the Chancellor.

For example, in Helmick v. Davenport, R. I. & N. W. R. Co., 1916, 174 Iowa 558, 156 N. W. 736, it was held that

where a boundary line including property occupied by the grantor, and not included by the grantor in the description of the deed, is pointed out to the grantee by the grantor as the true line, there is a sufficient giving of possession to entitle the grantee to tack the grantor's possession to his own.

If, as appears from the wealth of cases cited by the annotator and from the text statement above quoted, the solution of the question turns upon the intention of the parties appearing from parol evidence or implied from circumstances, it seems to us that there can be no question of defendants' right to tact. As in Helmick v. Davenport, R. I. & N. W. R. Co., 174 Iowa 558, 156 N. W. 736, cited supra, the disputed strip upon which one side of the driveway and one wall of the garage were constructed was pointed out to Mrs. Hagaman as being embraced within the lot which she purchased, by a former owner though not by her immediate grantor. The belief that this was the true line persisted in the minds of the parties until Mrs. Hagaman conveyed to her three children. In view of these additional circumstances, and the fact that the disputed strip was clearly appurtenant to the property described in the deed and necessary for its full use and enjoyment, circumsatnces not considered in the previous cases in this State dealing with the question, we think the three children should be allowed to tack their possession to that of their mother.

We think the Chancellor was correct on the further ground that there was no real change in the possession after Mrs. Hagaman conveyed the property. The parties to the deed were all members of the same family and continued to reside on the property and use the driveway and garage in the same manner as before the deed was executed.

"Where a family has lived in continous adverse possession of land, the title being in one of them or in different members of the family at different times, they stand in such privity one to another that the tacking of the possessions is permissible. Moreover, where the possession of the adverse claimant constitutes a continuation of the occupation by other members of his family, the character of claimant's possession must be determined with reference to the circumstances under which the family's occupancy began and continued." 2 C. J. S., Adverse Possession, sec. 130, page 690.

■ The maxim de minimis non curat lex, the law cares not for trifles, (Gibson's Suits in Chancery, Section 64, sub-section 9), we think, should control complainant's contention as to an area on the rear of the garage approximately 2' x 4' which is shown to have been adversely held for only six years or one year short of the statutory period, especially since the question was not raised in the Chancery Court. 5 C. J. S., Appeal and Error, 1909, page 1412.

We find no error in the decree and all assignments are accordingly overruled and the decree affirmed, all costs to be taxed to complainant. For the sake of the future repose of the title to both lots the cause will be remanded if requested by either paty within 10 days to have the disputed boundary staked out and described. It may be that counsel can agree on an exact description and make it a part of the judgment of this Court.

Howard and Goodman, JJ. concur.