# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| MARGARET S. LEMM, | ) |
| | ) |
| Plaintiff/Counter-Defendant/ | ) Davidson Chancery No. 95-1308-II |
| Appellant, | ) |
| | ) |
| VS. | ) Appeal No. 01A01-9607-CH-00330 |
| | ) |
| GARY L. ADAMS, | ) |
| | ) |
| Defendant/Counter-Plaintiff | ) |
| Appellee | ) |
| | ) |
| GARY L. ADAMS, | ) |
| | ) |
| Third-Party Plaintiff/Appellee | ) |
| | ) |
| VS. | ) |
| | ) |
| ANNA FRIESENHAHN, | ) |
| | ) |
| Third-Party Defendant/Appellant | ) |

FILED

April 25, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR


**CHARLES C. MORROW**
**MORROW, BOWHAN & ASSOCIATES**
Nashville, Tennessee
Attorney for Appellants

**BARBARA J. PERUTELLI**
**SCHULMAN, LeROY & BENNETT, P.C.**
Nashville, Tennessee
Attorney for Appellee


**AFFIRMED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this boundary dispute, Plaintiff Margaret S. Lemm and Third-Party Defendant Anna Friesenhahn appeal the trial court's order entering summary judgment in favor of Defendant/Appellee Gary L. Adams. In granting Adams' motion for summary judgment, the trial court ruled that, as a matter of law, Lemm's action for trespass and injunctive relief was barred by Adams' adverse possession of the disputed property for a period in excess of seven years. We affirm.

**FACTS**

Lemm and Adams own adjoining parcels of property along Whites Creek Pike in Davidson County. Adams acquired his property in 1981. When Adams purchased the property, an existing fence ran along what Adams believed to be the border between his property and what is now Lemm's property. Additionally, an existing road ran more or less parallel to and just inside the fence line. Since acquiring the property, Adams continuously has used the road and the fence. Over the years, Adams has improved the road as needed, and he also has maintained the fence in order to keep livestock on his property. In 1986 or 1987, Adams constructed some new fencing because some of the old fence posts had deteriorated. While a portion of the new fence line coincided with the old fence line, in some places Adams moved the fence line several feet closer to the Lemm property. Adams has continued to maintain and use the new fence since its construction.

Lemm's property, on the other hand, has been in Lemm's family for many years. Lemm first acquired a one-third interest in the property from her mother in 1987. In 1994, Lemm purchased the other two-thirds interest in the property from her sisters at a public auction, and she had a deed prepared conveying a life estate to herself and the remainder in fee to her daughter, Anna Friesenhahn. At the time of the sale, the auctioneer announced that Adams "admitted he was over the line but there would be no problem." After the auction, Lemm introduced herself to Adams and asked him about the fence. Adams admitted that, when he constructed his fence, he did not have a legal survey showing the location of the property line. Lemm subsequently had a survey performed

2

which showed that Adams' fence encroached upon her property. Adams reportedly told the surveyor "that he did not know exactly where his property line was and didn't believe that [the old fence line] necessarily represented the true property line." Lemm also hired a fence company to construct a fence along the surveyed boundary. When Adams learned that fence company employees planned to construct the fence across his road, he advised the employees that the road was his property and could not be fenced.

In April 1995, Lemm filed this lawsuit against Adams, seeking injunctive relief and damages for trespass. Adams answered, raising the affirmative defense of adverse possession and asserting a counterclaim for ejectment. Adams later amended his counterclaim to add Anna Friesenhahn as a third-party defendant.

In October 1995, Adams filed a motion for summary judgment, contending that Lemm's action against him was barred by his adverse possession of the disputed property. Adams additionally contended that his adverse possession entitled him to possession of and title to the disputed property. Lemm opposed the motion, contending that summary judgment was precluded by the existence of genuine issues of material fact as to Adams' defense of adverse possession. Lemm demanded that a jury trial be conducted to "try the factual issues in this case."

The trial court subsequently entered an order granting Adams' motion for summary judgment and dismissing Lemm's claims. The trial court's order declared Adams to be the owner in fee of, and entitled to possession of, all of the land lying to the north of (inside) Adams' fence line in accordance with a March 1996 survey performed by Adams' surveyor.

Lemm filed a motion to amend the order, which the trial court denied, and this appeal followed. On appeal, Lemm contends that the trial court erred in three respects: (1) in granting Adams' motion for summary judgment based on Adams' defense of adverse possession; (2) in denying Lemm's demand for a jury trial; and (3) in denying Lemm's motion to disqualify Adams' attorney.

3

**ADVERSE POSSESSION**

Lemm first contends that the trial court erred in granting Adams' motion for summary judgment because a genuine issue of material fact remains as to whether Adams intended to adversely possess the disputed strip of land. See Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993) (indicating that summary judgment is appropriate "only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law"). In support of this contention, Lemm points to evidence that Adams maintained and improved the existing fence based on his mistaken belief that the fence line represented the true boundary line. Citing Buchanan v. Nixon, 43 S.W.2d 380 (Tenn. 1931), Lemm argues that the intent to establish a boundary line is an essential element of the defense of adverse possession and that Adams' mistaken or accidental possession of the disputed property was legally insufficient to support such a defense.

This argument is without merit. Beginning with our Supreme Court's decision in Erck v. Church, 11 S.W. 794 (Tenn. 1889), the courts of this state have continually adhered to the rule that, "where a purchaser of land accidentally or by mistake encloses a contiguous strip, believing he is placing the fence on the boundary, and holds the enclosed strip for [seven] years, his possession is adverse, and will avail against the true owner." Peoples v. Hagaman, 215 S.W.2d 827, 829 (Tenn. App. 1948) (citing Erck v. Church, 11 S.W. 794 (Tenn. 1889), and Williams v. Hewitt, 164 S.W. 1198 (Tenn. 1914)); accord Liberto v. Steele, 221 S.W.2d 701, 703 (Tenn. 1949); Cross v. McCurry, 859 S.W.2d 349, 352 (Tenn. App. 1993). In such cases, the actual intent to adversely possess the property of another need not be shown; it is sufficient that the possession was due to ignorance or mistake as to the true location of the boundary line. Liberto v. Steele, 221 S.W.2d at 703; Foster v. Hill, 510 S.W.2d 520, 522 (Tenn. App. 1973); Gibson v. Shular, 194 S.W.2d 865, 867 (Tenn. App. 1946).

We believe that the facts of this case fall squarely within the holding of Erck and its progeny. In the present case, it was undisputed that Adams believed the old fence line to

be the true boundary line when he purchased his property in 1981. Since acquiring the property, Adams continuously has used the land inside the fence line as his own property. To this end, Adams has maintained the existing fence and, in some places, has constructed new fencing. Under these circumstances, the trial court properly entered summary judgment in favor of Adams based on the defense of adverse possession because it was immaterial that Adams may have possessed Lemm's property by ignorance or mistake rather than by design. Liberto v. Steele, 221 S.W.2d at 703.[1]

In so holding, we conclude that Lemm's reliance on Buchanan v. Nixon, 43 S.W.2d 380 (Tenn. 1931), is misplaced because the facts in Buchanan are distinguishable from those found in the present case and in Erck. In Buchanan, the Court noted that the erection of the fence there "was not by the adverse claimant at all, but by the owner of the adjoining lot for usages of his own, not only in ignorance of the true line, but without purpose to set up a line." Buchanan, 43 S.W.2d at 382. Stressing that intent was an essential element of adverse possession, the Court declined to extend the rule of law announced in Erck to the facts of the Buchanan case, but the Court did not overrule Erck. Id. Subsequent appellate decisions have reaffirmed Erck's holding as the "established rule of property in this State" and seemingly have restricted Buchanan's holding to the facts of that case. Liberto v. Steele, 221 S.W.2d at 704; see also Peoples v. Hagaman, 215 S.W.2d at 829; Gibson v. Shular, 194 S.W.2d at 866.

---

[1] In light of our affirmance of the summary judgment entered in favor of Adams, we need not address the issue of whether the trial court erred in denying Lemm's demand for a jury trial. We question, however, whether the trial court, after ruling in favor of Adams on the defense of adverse possession, acted properly in proceeding to establish a boundary line giving Adams title to the disputed strip of land. We agree that Adams' adverse possession of the disputed strip of property for a period in excess of seven years constituted a valid defense which barred Lemm's claims to recover the property. See Williams v. Hewitt, 164 S.W. 1198, 1199 (Tenn. 1914); Erck v. Church, 11 S.W. 794, 795 (Tenn. 1889); T.C.A. § 28-2-103 (1980). Citing Tennessee Code Annotated section 28-2-105 (1980), Adams contended that he additionally was entitled to legal title after seven years because his adverse possession of the disputed property was under color of title. Contrary to this contention, Adams' possession does not appear to have been under color of title because his deed did not contain a description of the disputed strip of property. See Blankenship v. Blankenship, 658 S.W.2d 125, 127 (Tenn. App. 1983) (indicating that adverse possession was without color of title because boundary line deed introduced by defendant for title source did not appear to include disputed acreage); see also Peoples v. Hagaman, 215 S.W.2d 827, 828 (Tenn. App. 1948) (affirming chancellor's decree which ruled that defendants' adverse possession of disputed strip of land was without color of title because strip in controversy fell within boundaries of lot owned by plaintiff). Accordingly, in order to be entitled to a decree declaring him the owner in fee of the disputed strip, Adams was required to demonstrate that his adverse possession exceeded twenty years. Hallmark v. Tidwell, 849 S.W.2d 787, 792-93 (Tenn. App. 1992); Johnson v. City of Mt. Pleasant, 713 S.W.2d 659, 661 (Tenn. App. 1985); Moore v. Brannan, 304 S.W.2d 660, 667-68 (Tenn. App. 1957); Gibson v. Shular, 194 S.W.2d 865, 866 (Tenn. App. 1946). Nevertheless, our resolution of this question does not require a reversal of the trial court's order because Lemm did not raise this issue below or on appeal.

5

## DISQUALIFICATION OF COUNSEL

During the course of this litigation, Lemm filed a motion to disqualify Adams' attorney, Barbara J. Perutelli, on the basis of a conflict of interest. The asserted conflict was that, when Lemm purchased the property at auction, Michael Bennett, an attorney with Perutelli's law firm, performed a title search on the property. According to Lemm's motion, Bennett's title search revealed "that there were no exceptions, encroachments or defects with said property" and "[t]his was certified through the Republic Title Company for the issuance of a title policy."

Adams responded by conceding that Michael Bennett, one of the law firm's partners, had represented Lemm in the closing of her property in 1994. In an affidavit filed with the court, Bennett outlined the extent of his prior communications with Lemm. Bennett initially was contacted by the auction company which sold the property. At the auction company's request, Bennett performed a title search and handled the closing on the property. During the closing, which was transacted by mail, Bennett and Lemm had at least one telephone conversation in which Lemm gave instructions concerning the names which would appear on the deed. In connection with the closing, Bennett provided Lemm with an owner's title insurance policy from Old Republic National Title Insurance Company. Contrary to Lemm's assertion, the policy did not certify that "no exceptions, encroachments or defects" existed with respect to the property. Instead, the policy indicated that it did not insure against loss or damage by reason of certain contingencies, including, but not limited to, "[f]acts which would be disclosed by a comprehensive survey of the premises herein described." Sometime after the closing, Lemm contacted Bennett to advise him that a neighboring landowner had built a fence on her property and to ask him if the title policy would cover this problem. Bennett informed Lemm that he doubted the policy would cover this problem, but he advised her to contact counsel for the title company for a definitive answer, and he gave her the title company counsel's telephone number. Lemm later contacted Bennett to inform him that she was suing the neighboring landowner for encroachment. Lemm again asked Bennett if the title policy would cover this situation, and Bennett again

instructed Lemm to contact counsel for the title company.  During this last conversation,

Lemm advised Bennett that a potential conflict of interest existed because Perutelli was

representing the neighboring landowner.  At this point, communications between Lemm

and Bennett apparently ceased, and Bennett and Perutelli sought advice from the Board

of Professional Responsibility.

After conducting a hearing on this matter, the trial court entered an order denying

Lemm's motion for disqualification.  In denying the motion, the trial court found:

> [T]hat there is no conflict of interest which would disqualify
> defense counsel in her representation of the defendant.  The
> Court finds that there were no confidences or secrets disclosed
> in Mr. Bennett's representation of Ms. Lemm in the closing nor
> in the subsequent phone conversations with her.  The Court
> finds that the boundary line dispute currently before the Court
> between the parties did not arise out of nor is it closely
> associated with the closing of the Lemm property by the law
> firm . . . . The Court further finds that the current representation
> of the defendant will not undo legal matters resulting from the
> closing.

We begin with the premise that the disqualification of a litigant's attorney is

discouraged.  As this court has explained,

> A trial court has a broad range of options available to
> insure that its proceedings are fair both in appearance and in
> fact.  Disqualifying an attorney is the most drastic.  Schiessle
> v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983); Burnette v.
> Morgan, 303 Ark. 150, 794 S.W.2d 145, 147-48 (1990).  It
> invariably causes delay, increases costs, and deprives parties
> of counsel of their choice. Courts should, therefore, disqualify
> counsel with considerable reluctance and only when no other
> practical alternative exists.  Board of Educ. v. Nyquist, 590
> F.2d 1241, 1246 (2d Cir. 1979).

In re Ellis, 822 S.W.2d 602, 605 (Tenn. App. 1991); accord Whalley Dev. Corp. v. First

Citizens Bancshares, Inc., 834 S.W.2d 328, 332 (Tenn. App. 1992) (noting that trial courts

"should be reluctant to disqualify a litigant's counsel of choice and should grant

disqualification motions sparingly").

In reviewing a trial court's disqualification of counsel, this court previously has

considered the three-step analysis outlined in Schiessle v. Stephens, 717 F.2d 417 (7th

Cir. 1983), and subsequently adopted by Tennessee's Board of Professional Responsibility

7

in Formal Ethics Opinion 89-F-118. See King v. King, 1989 WL 122981, at *7 (Tenn. App. 1989). This three-step analysis requires the court to determine (1) "whether a substantial relationship exists between the subject matter of the prior and present representations"; (2) if a substantial relationship does exist, "whether the presumption of shared confidences with respect to the prior representation has been rebutted"; and (3) if the presumption referenced in step 2 has not been rebutted, "whether the presumption of shared confidences has been rebutted with respect to the present representation." Schiessle, 717 F.2d at 420.

Applying the foregoing analysis to the present case, we affirm the trial court's decision to deny Lemm's motion to disqualify Adams' attorney. With regard to the relationship between the subject matter of the former and present representations, the trial court found that the current boundary dispute did not arise out of, nor was it closely associated with, the services performed by Bennett in connection with the prior closing of the Lemm property. More importantly, the trial court made the specific finding that Bennett's representation of Lemm did not result in the disclosure of any confidences or secrets, and we conclude that the evidence does not preponderate against this finding. See T.R.A.P. 13(d). Significantly, Lemm did not contend below, nor does she contend on appeal, that Bennett's prior closing of the property involved any confidences or secrets which could be used against Bennett in the present proceeding. Accordingly, even if a substantial relationship existed between the current boundary dispute and the prior closing of the Lemm property, the presumption of shared confidences was sufficiently rebutted to permit Perutelli to represent Adams in this lawsuit. See King v. King, 1989 WL 122981, at *9 (Tenn. App. 1989) (holding that trial court erred in disqualifying defendant's counsel where there was no evidence that plaintiff ever communicated any confidence or secret during prior representation); see also Autry v. State, 430 S.W.2d 808, 810 (Tenn. Crim. App. 1967) (holding that trial court did not abuse its discretion in permitting attorney to participate in trial as special prosecutor where, although defendant sought attorney's services prior to trial, during interview attorney learned nothing of confidential nature that would embarrass defendant at trial).

8

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Appellants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.