IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2001 Session

## DON STONE v. DONALD W. BRICKEY, ET AL.

**Appeal from the Chancery Court for Sumner County**
No. 2000C-29      Tom E. Gray, Chancellor

_____

**No. M2000-03093-COA-R3-CV - Filed October 5, 2001**

_____

The trial court found that the plaintiff had a prescriptive easement over an old county road that abutted his land. The defendants argue that the trial court was in error because the plaintiff did not prove all of the elements required to establish a prescriptive easement. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

James C. Hofstetter, Nashville, Tennessee, for the appellants, Donald W. Brickey and Frances E. Brickey.

C. Tracey Parks, Gallatin, Tennessee, for the appellee, Don Stone.

**OPINION**

### I. AN OLD COUNTY ROAD

The dispute in this case involves an old county road that runs southwards from Highway 25 (also known as Red River Road) alongside Station Camp Creek in Sumner County. The proof showed that the road was in use at least since 1914, when the plaintiff was a student at Cottontown Elementary School. The county stopped maintaining the road when it built nearby Upper Camp Creek Road sometime in the 1920's.

The plaintiff, 93-year-old Don Stone, has long owned a home on property that abuts Highway 25. On January 20, 1972, the defendants Donald Brickey and his wife Frances purchased two tracts of land on the south side of Highway 25: a one acre tract containing an historic log home, and an adjoining two acre tract. The warranty deed to the one acre property recites that it is bounded on the

north by Red River Road, and "on the south and east by the old county road." The two acre property is bounded on the west by the property of Don Stone.

On January 10, 1973, Mr. Stone purchased a fifty acre tract of farm land adjoining his home property. This tract is 600 feet from Highway 25, and since no road or driveway joins Mr. Stone's two properties, it is accessible only by the old county road.

On December 11, 1973, the Brickeys obtained a quitclaim deed from the former owners of their two tracts, which purported to transfer to the defendants title to the old county road. It is unclear from the record what interest in the road, if any, had been possessed by the Brickeys' predecessors in interest.

Mr. Stone rented his fifty acres to a number of tenants over the years, some of whom raised cattle, hay and tobacco. A tobacco barn is located on the property. In 1987, Mr. Stone leased the land to Tim Ector, who has grown tobacco on the land since that time. Like Mr. Stone's previous tenants, Mr. Ector and his farmhands used the county road to reach the fields and the barn. Other individuals using the road included occasional hunters, and William Stewart, a friend of Mr. Stone who dredged gravel out of the creek for maintaining the road.

In 1989, the Tennessee Department of Transportation (TDOT) made plans to replace the Highway 25 bridge over Station Camp Creek. The plans included placement of guardrails along Highway 25 that would have the effect of blocking access to the old county road. When Mr. Stone saw that this had been done, he requested that the State provide another access to Highway 25, and they complied by moving the entry to the old county road about 30 or 40 feet west.

The Brickeys had apparently not been happy about the traffic on the old county road, but Donald Brickey did not voice objections to its use until after his wife suffered a stroke. In 1997, Mr. Brickey told Mr. Stewart he did not want him using the road because the noise of his equipment was very disturbing to her. Mr. Stewart complied. In 1999, Mr. Stone gave a hunter permission to hunt on his property. Mr. Brickey accosted the hunter on the old county road, and told him not to use the road anymore, or he would be arrested.

On December 3, 1999, Mr. Brickey sent a hand-written note to Mr. Stone, stating that ". . . as of the end this month, December 31st, 1999 the Creek Road owned by Donald W. Brickey will be closed to further traffic. This arrangement will not work as you have abused the privilege by attempting to grant a deer hunter access to this private road."

On January 1, 2000, Mr. Brickey placed a cable across the road, secured by a lock to a stout wooden post. Mr. Ector asked him to remove the cable so he could get his tobacco out. Mr. Brickey refused. Mr. Ector was able to bring his tobacco crop to market by driving it across Mr. Stone's other property during dry weather, though his vehicle left deep ruts in the soil.

## II. PROCEEDINGS IN THE TRIAL COURT

On February 4, 2000, Don Stone filed a Complaint in the Chancery Court of Sumner County which named Mr. and Mrs. Brickey as defendants. The Complaint asked the court to declare Mr. Stone to be the owner of the disputed roadway by virtue of adverse possession, or in the alternative to declare a prescriptive easement in his favor. The Complaint also asked the court to issue an injunction to compel the defendants to remove the cable from across the road.

The trial of the matter was conducted on August 2, 2000. The testifying witnesses included all the parties, Mr. Ector, Mr. Stewart, the Sumner County Register of Deeds, the County Highway Superintendent, the Chief Deputy Assessor of Property, and an employee of the State Department of Transportation who oversaw the bridge replacement on Highway 25. At the conclusion of all the proof, the trial court took the matter under advisement, and asked counsel for the parties to prepare briefs on their respective positions.

On November 22, 2000, the trial court filed its final order. The order found that Mr. Stone had a prescriptive easement over the roadway, and that he could allow his tenant to use the easement to gain access to his barn, but could not open the easement to hunters or to third parties for the hauling of creek gravel. The court also stated that it "does not order the cable removed as Mr. Stone and Mr. Brickey should be able to reach an agreement about a key. The reasoning here is that both should not want trespassers on their land." The Brickeys filed a notice of appeal.

## III. PRESCRIPTIVE EASEMENT

To establish a prescriptive easement, a party must prove by clear and convincing evidence that he has used the easement for at least twenty years, and that such use is "adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period, and while the owner of the servient tenement is under no legal disability to assert his right or to make a grant." *House v. Close*, 346 S.W.2d 445 at 447 (Tenn. Ct. App.1961).

The appellants argue that Mr. Stone has not proven facts sufficient to establish his purported easement. They contend, for example, that his use of the road between 1973 and 1989 was not adverse, because as the abutting landowner of an abandoned county road, he had a private right to use that road. *See Knierim v. Leatherwood*, 542 S.W.2d 806 (Tenn. 1976). They argue that the 1989 relocation of the entrance to the road took a piece of their warranty deed property, and they conclude that while Mr. Stone's use of the road may have been adverse thereafter, such use did not persist for the full prescriptive period.

It appears to us, however, that all of Mr. Stone's use of the road after 1973 was adverse to the purported interest which the appellants derived from their quitclaim deed. If Mr. Stone traveled on this road pursuant to his rights as an abutting landowner, then this satisfies the requirement that a prescriptive user proceed under a claim of right.

Appellants also argue that Mr. Stone did not prove by clear and convincing evidence that his use of the road was continuous. While both Mr. and Mrs. Brickey testified that they only occasionally saw Mr. Stone using the road, it is undisputed that after acquiring the land, he leased it to a succession of tenants, all of whom used the road for access. Two of those tenants, Mr. Ector and Mr. Stafford, testified extensively as to their activities on the land and their use of the road.

Appellants argue that a tenant's use of an easement of way does not inure to the benefit of the landlord unless the tenant's lease includes the easement, either expressly or impliedly. *See* 25 Am. Jur. 2d. *Easements and Licenses*, § 46, p. 617. Though a written lease was not presented to the court, it is apparent to us that Mr. Stone's agreement with his tenants had to include the right to enter upon the leasehold by the only road available, or the leases would have been of no value. Thus, the leases at least impliedly include the easement.

Another of appellants' arguments is that the appellee's use of the creek road was not exclusive. They note that certain members of the general public, including Billy Stewart, used the roadway. However, the term "exclusive" does not mean that the easement must be used by the claimant only. It simply means that the claimant's right does not depend on a similar right in others. *See House v. Close*, 346 S.W.2d 445 (Tenn. Ct. App. 1961); Am. Jur. 2d *Easements and Licenses*, § 71, p. 641.

There was no evidence that the road was widely used by the general public, and such use has to be considered unlikely in view of the fact that the 600 foot long road ended at Mr. Stone's property. In any case, Mr. Stone's use of the road was not dependent on the rights of Mr. Stewart or of anyone else, but followed from his status as an abutting landowner.

The Brickeys also argued that Mr. Stone's use of the road was without their knowledge and acquiescence, and they testified that they believed that such use was sporadic at most. But the road passes close to their residence, and it is apparent from the record that they were well aware of the traffic generated by the farming activities on Mr. Stone's land. They did not make any objections to any use of the road until 1997, and thus their acquiescence can be presumed.

Finally, appellants argue that the relocation of the entrance to the road by the Department of Transportation destroyed any existing prescriptive rights held by Mr. Stone. They note the general rule that the path of an easement may not be shifted from place to place during the establishment period unless the deviation is made by agreement. 25 Am. Jur. 2d *Easements and Licenses*, § 79 pp. 647-648; *Lisenbee v. Parr,* 465 S.W.2d 361 (Tenn. Ct. App. 1970). It appears to us, however, that the under the circumstances present here, the relocation of the entrance thirty or forty feet west should not be considered a shift in the easement.

When the Department of Transportation installed a guardrail along the new Highway 25 bridge, they effectively closed off the entrance to the old county road. Mr. Stone asked them to help him regain access. According to Joe Payne, TDOT's Regional Transportation Manager in charge of right-of-way acquisitions, the Department did not change the path of the old road, but put in an

"S" curve to reach the existing path. Although the appellants claimed that the Department took a piece of their warranty deed property to accomplish this, Mr. Payne testified that the entire new entrance was contained in the State's existing right of way.[1]

While there is a general rule barring the owner of a dominant estate from making a material alteration in an easement without the consent of the owner of the servient estate, a slight change, which does not result in the creation of a new and different servitude, is not usually considered objectionable. 25 Am. Jur. 2d *Easements and Licenses* § 96, pp. 669-670.

In the present case, the State's action did not change the character or volume of traffic on the old county road, and according to Mr. Payne, it did not involve any of the appellants' property that was not already subject to the State's easement of way. It appears to us that the creation of the new entrance did not materially increase the burden on Mr. Brickey's estate, and we do not believe that it furnishes grounds for cutting off Mr. Stone's prescriptive rights.

## IV. WHO MAY USE THE ROAD?

Mr. Stone contends that the trial court erred by limiting the use of the road to himself and his tenants. He argues that Mr. Stewart should be allowed to resume taking gravel from the creek, and that hunters should be allowed free access to his land by way of the road. However, the right to use an easement is normally confined to the easement holder and his privies. Mr. Stone's argument is without merit.

## V.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Sumner County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, Donald W. Brickey and Frances E. Brickey.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[1] We note that no condemnation proceeding was instituted by the State to acquire the appellants' property, nor did the appellants institute an inverse condemnation action, as would have been their right if a piece of their land was taken.