IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2002 Session

## BOYD STINSON, ET AL v. BRENDA SUE BOBO

**Appeal from the Chancery Court for Williamson County**
**No. I-26667     R.E. Lee Davies, Chancellor**

---

**No. M2001-02704-COA-R3-CV - Filed - February 4, 2003**

---

This appeal involves a conflict between neighbors over whether the Stinsons have a right to use a dirt lane that runs across the edge of Mrs. Bobo's property and connects the Stinsons' property to a county road. The trial court found a prescriptive easement was proved. Mrs. Bobo appeals that judgment to this court on two grounds: (1) that the Stinsons failed to show exclusive use of the easement during the prescriptive period; and (2) that there was no acquiescence to the Stinsons' claim of right to use the easement by the prior owners of what is now Mrs. Bobo's property during the prescriptive period. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and THOMAS W. GRAHAM, SP. J., joined.

Tony L. Turnbow, Franklin, Tennessee, for the appellant Brenda Sue Bobo.

M.T. Taylor, Jr., Franklin, Tennessee, for the appellees, Boyd Stinson, George Stinson, Chester Stinson, Faye Stinson Harris.

### OPINION

I. Facts

This case arises from a dispute between two neighbors over the use of a dirt lane which connects the appellees' property to a public road. The appellees, Boyd Stinson, George Stinson, Chester Stinson and Faye Stinson Harris (the "Stinsons") along with several of their siblings own a tract of land on Bice Creek in Williamson County, technically known as Parcel 6. The appellant, Brenda Sue Bobo, also owns a tract of land on Bice Creek, technically referred to as Parcel 7.01. Mrs. Bobo's property is located between the Stinsons' property and the Daugherty-Capley Road, a

county road.[1]  The area where the parcels of land in question are located is extremely rural.  For many years, the Stinsons accessed their property by way of the dirt lane which runs alongside and through Bice Creek.  The lane crosses the appellant's property.  The lane is approximately (8) eight to (10) ten feet wide and is commonly called Bice or Byson Creek Road, Bice Creek Lane or Bice Branch Road.  The trial court described the lane as follows:

> The Bice Creek Lane begins at a point on the Daugherty-Capley Road and follows Bice Creek for approximately two miles, then leaves Bice Creek and reconnects with the Daugherty-Capley Road, forming a shape of a quarter moon.[2]

At some point, hard feelings developed between the Stinsons and the Bobos, and in 1999, Mrs. Bobo had some of the Stinsons arrested for trespassing for using the lane to access their property.  The Stinsons filed suit on November 23, 1999, in Williamson County Chancery Court seeking to establish the existence of a public road, a prescriptive easement, an easement by necessity, and/or an easement by implication across Mrs. Bobo's property.  The Stinsons also sought a temporary and permanent injunction to allow them to cross Mrs. Bobo's property to access their property without interference.

The trial court denied the temporary injunction.  Mrs. Bobo filed a motion to dismiss the claims for the easement by implication and easement by necessity.  The trial court denied the motion at that time, but granted the motion as to those two claims when Mrs. Bobo renewed it at the beginning of the trial.

The trial court heard the matter without a jury on May 24, 2001, and July 18, 2001.  The trial court entered a final decree on September 21, 2001, finding that the Stinsons had not proved the existence of a public road across Mrs. Bobo's property.  The trial court ruled that the Stinsons did, however, establish a prescriptive easement across Mrs. Bobo's property.  Mrs. Bobo appealed.

## II.  Background

The parties stipulated that there is no unity of title between the two parcels and that none of the deeds for either parcel makes a reference to any road or easement across Mrs. Bobo's parcel.  The Stinsons acquired their property from their parents, George and Sadie Jewel Stinson, who acquired the property from Sadie's father, J. H. "Hard" Martin.  Mrs. Bobo and her former husband Jack Tanksley purchased Parcel 7.01 in 1974 from Clyde Mayo.  Mr. Mayo purchased the property from J. T. Capley, who owned the property at about the time that Mr. Martin was living on Parcel 6.  The

---

[1]Other parcels lie between the Stinsons' property and Mrs. Bobo's property, but the owners of those parcels are not involved in this lawsuit.

[2]This description appears to represent the lane at the height of its use, before the 1940's, because according to a 1953 United States Department of the Interior geological survey map compiled from aerial photographs taken in 1947 and spot field surveys conducted in 1953, the Bice Creek Lane at the time the map was created appears as an unimproved dirt road that ends approximately at the Stinsons' property.

Stinsons lived on the property with their parents and then their mother from 1945 to around 1967. During the time the Stinsons lived on Parcel 6, they crossed what is now Mrs. Bobo's property to gain access to Daugherty-Capley Road. Daugherty-Capley Road was a dirt road until the 1940's. The Stinsons thought that the dirt lane across Parcel 7.01 was also a county road, which they and everyone else had a right to use.

At one time there were several roads leading from public roads to the Stinsons' property in addition to the lane over Parcel 7.01. According to testimony at trial, these roads fell into disuse over the years, leaving Parcel 6 functionally landlocked.

The Stinsons called many witnesses to testify to the public use of the lane and that the lane was considered to be open to the public. When the Stinsons' mother moved from the property sometime between 1965 and 1967, no one else lived on the property with the exception of someone who camped on the property for a few days and an older woman who lived in the house on the property for a short period of time with no running water or electricity. The Stinsons visited the property a few times a year to hunt and reminisce after 1967. During these visits they always used the lane crossing what is now Mrs. Bobo's property to access their property.

Mrs. Bobo testified that when she moved to the property in 1974, there was no road crossing the property to the Stinsons' property. Mr. Bobo testified that there was no road crossing the property to the Stinsons' property even prior to 1974, when he hunted on the property. After purchasing the property in 1974, Mrs. Bobo extended her driveway to a barn at the rear of her property. She believes that it is that driveway that the Stinsons now assert is a road.

Mrs. Bobo claims that she gave the Stinsons permission to cross her property at times when it was not wet. At some point, the parties got into a disagreement about ruts in Mrs. Bobo's yard. Mrs. Bobo posted "no trespassing" signs on her property that were torn down.

In 1994 Williamson County paved and improved Daugherty-Capley Road. There were guard rails placed across the area claimed by the Stinsons to be a public road. Mrs. Faye Stinson Harris convinced the county to take down the guard rails after she asserted that she owned the property and needed access to it. The county then built a large ramp on what Mrs. Bobo claims is her property, without her permission. According to the testimony of Mr. Randolph Chapdelaine, a surveyor commissioned by the Stinsons in February of 2000 to survey the property where they claim their easement is located, this ramp is located entirely on a county right-of-way.

The lane across Parcel 7.01 does not appear on any map as a dedicated county road. In fact, the highway superintendent testified that the lane is not a county road according to all of the documents he has reviewed.

The sole issue on appeal is whether the trial court erred in finding the existence of a prescriptive easement across Mrs. Bobo's property.

## III. Prescriptive Easement

An easement is an interest in another's real property that confers on the easement's holder an enforceable right to use that real property for a specific purpose. *Bradley v. McLeod,* 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998). The most common form of an easement is a right of passage across another's property. A prescriptive easement is an implied easement that is premised on the use of the property rather than language in a deed. A prescriptive easement arises when a person, acting under an adverse claim of right, makes continuous, uninterrupted, open, visible, and exclusive use of another's property for at least twenty years with the owner's knowledge and acquiescence.[3] *Michael v. Jakes*, No. M1999-02257-COA-R3-CV, 2002 Tenn. App. LEXIS 489, at *48 (Tenn. Ct. App. Jul. 12, 2002) (no Tenn. R. App. P. 11 application filed) (citing *Bradley*, 984 S.W.2d at 935; *Pevear v. Hunt*, 924 S.W.2d 114, 115-16 (Tenn. Ct. App. 1996); *House v. Close*, 48 Tenn. App. 341, 345, 346 S.W.2d 445, 447 (1961) (some citations omitted)). The party asserting a claim of prescriptive easement bears the burden of proving these elements by clear and convincing evidence. *See McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991); *Fite v. Gassaway*, 27 Tenn. App. 692, 701, 184 S.W.2d 564, 567 (1944).

The trial court found that the Stinsons carried their burden of establishing a prescriptive easement to the lane stating that:

> Before the Stinson family purchased the subject property in 1945, the Bice Creek Lane ceased being used by the public because of the construction of the Daugherty-Capley Road in 1940. In 1945 the only persons using the Bice Creek Lane were those property owners along the lane and other persons visiting those property owners. From 1945 to 1967, the Stinsons lived on the subject property. During this period of time their only means of access was the Bice Creek Lane. Their use of said lane was clearly open, continuous, uninterrupted, adverse and exclusive.

> There was no evidence that J. T. Capley or Mr. Mayo ever attempted to control or restrict access to the Bice Creek Lane. Neither the plaintiffs nor any of the other witnesses who testified in this case indicated they ever requested permission from Mr. Capley or Mr. Mayo, or anyone else before using the lane.

> Mrs. Bobo who purchased the property in 1971 with her husband, left in 1978 and did not return until 1999. She did admit that the barriers erected by Mr. Tanksley were really meant for trespassers and not the Stinsons.

---

[3]J. H. "Hard" Martin purchased what is now the Stinson property around 1900. He sold the property to his daughter and son-in-law, George S. Stinson and Sadie Jewell Stinson in 1945. George and Sadie Jewell Stinson are the parents of the appellees in this case. Mrs. Stinson, a widow, transferred title to the property to her nine children, including the appellees, as tenants in common in 1979. Thus, there is no issue regarding the right to tack uses by prior owners of the dominant tenement in order to establish twenty years of continuous use.

The proof concerning the relationship between the Stinsons and the Tanksleys or the Bobos does not support the conclusion that the Stinsons' use was permissive. In fact the Court suspects it was the Stinsons' demanding demeanor which led to their arrest. The Court concludes that the use by the Stinsons until 1967 meets the requirements of a prescriptive easement in that their use was at least twenty years. Thus it appears the plaintiffs have demonstrated by clear and positive proof that they did use the Bice Creek Lane as their exclusive method of ingress and egress to their residence from 1945 until 1967. This conclusion is underscored by the testimony of Vernon Daugherty who stated that during the 1970's he traveled the lane and that it was still passable by vehicle during that time. . . . This use by the plaintiffs was open, actual, continuous and adverse to the predecessors holding the property interest of the land occupied presently by Mrs. Bobo. The only other persons using the lane would have been the Turman family, who lived on up the lane from the Stinsons and persons visiting either one of the two families. Therefore, the plaintiffs have carried their burden of establishing a prescriptive easement for twenty years.

Mrs. Bobo argues that the trial court erred in finding that the Stinsons had established a prescriptive easement to the lane across her property. She asserts two related bases for her argument: (1) that the Stinsons made no exclusive claim of right to use of the lane; and (2) that there was no acquiescence by her predecessors in title to such an exclusive right in the Stinsons. We will consider each argument in turn.

## IV. Exclusive Use

With regard to the requirement that to establish a prescriptive easement, the adverse use must be exclusive, this court has explained:

It is true as a general rule, and we have so stated, that the user must be exclusive in order to result in a prescriptive easement. However, as pointed out in 28 C.J.S. Easements sec. 15, the term "exclusive" does not mean that the easement must be used by one person only, but simply that the right shall not depend for its enjoyment on a similar right in others. That is, it must be exclusive as against the community or the public at large. The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement or by owners of adjoining land. And, it cannot be contended that a right of way easement is not exclusive because on occasion the right of way is put to some public use, all of which is in relation to those individuals who have or claim the right to use the right of way.

*House*, 48 Tenn. App. at 347, 346 S.W.2d at 448.

Mrs. Bobo does not disagree with this definition and, in fact, states that the use must be exclusive as against the community or the public at large. She asserts, however, that the Stinsons failed to meet the exclusive use requirement because: (1) the Stinsons did not use the path or road

exclusively; and (2) they never claimed to have an exclusive right to use it. These assertions are based upon the Stinsons' testimony that they thought the path or road was a public road and that they did not assert any right to use the lane which did not also belong to the general public. As stated earlier, the Stinsons proceeded on alternative theories: one being that Bice Creek Lane was a public road and the other that they had a prescriptive easement to use the lane.

The trial court found that the Stinsons failed to meet the burden of proving that Bice Creek Road was a public road because "although there was evidence of the use of the lane by the general public . . . there was not clear and convincing evidence that the prior land owners . . . [of what is now the Bobo property] ever intended to dedicate this lane as a public road." The court also found that "Bice Creek Lane ceased being used by the public because of the construction of the Daugherty-Capley Road in 1940. In 1945 the only persons using the Bice Creek Lane were those property owners along the lane and other persons visiting those property owners."

As the language from *House* quoted above illustrates, the term "exclusive" has not been interpreted by Tennessee courts to mean that the claimed easement must never have been used by the public, but only that the party asserting the easement have a particular purpose for using the easement that is different from that of the general public. For example in *Stone v. Brickey*, 70 S.W.3d 82, 86-87 (Tenn. Ct. App. 2001), this court rejected an argument similar to the one Mrs. Bobo makes in this case stating that:

> Another of appellant's arguments is that the appellee's use of the creek road was not exclusive. They note that certain members of the general public, including Billy Stewart, used the roadway. However, the term "exclusive" does not mean that the easement must be used by the claimant only. It simply means that the claimant's right does not depend on a similar right in others. *House v. Close*, 48 Tenn. App. 341, 346 S.W.2d 445 (Tenn. Ct. App. 1961); AM. JUR. 2d *Easements and Licenses,* § 71, p. 641. There was no evidence that the road was widely used by the general public, and such use has to be considered unlikely in view of the fact that the 600 foot long road ended at Mr. Stone's property. In any case, Mr. Stone's use of the road was not dependent on the rights of Mr. Stewart or of anyone else, but followed from his status as an abutting landowner.

In the present case, the trial court found that:

> During the early 1900's, persons from time to time, would travel the Bice Creek Lane. The main purpose of such travel was to visit the Martin family or the Turman family that lived on Bice Creek Lane; however, it appears that one time this lane was used by persons traveling north from the Craigfield Community south, into Hickman County. Sometime between 1935 and 1940 the Daugherty-Capley Road was built. At that point in time anyone who wished to travel from the Craigfield Community to Hickman County was much more likely to use the improved county road rather

than the Bice Creek Lane, which fell into disuse except by persons who owned or visited the property on this lane.

The Court recognizes the defendant's position that the plaintiffs' prescriptive easement theory should fail under the exclusivity factor if the public used this lane as a public road, but the status of this road changed between 1935 and 1940 with the construction of the new Daugherty-Capley Road. Upon its completion, the proof established the general public no longer had reason and in fact did not use the Bice Creek Lane.

The evidence does not preponderate against these findings. The trial court's conclusion is consistent, for example, with the testimony of Mr. Adolph Sullivan who testified as follows:

Q: So are you saying that this [the Bice Creek Lane] was the main route to get from Franklin down to Hickman County, down by the John T. Capley house?

A: If you went to Hickman County?

Q: Yes, sir.

A: Not after they built the Daugherty-Capley Road it wasn't. I built in '39; it was probably '40 or '41 when they built this Daugherty-Capley Road down through.

Q: So you were only there about a year before they built Daugherty-Capley Road?

A: Right.

Q: After they built Daugherty-Capley Road, all the traffic started going on Daugherty-Capley Road; didn't it?

A: All except where people lived in there; they still used it.

Consequently, we agree with the trial court which determined that prior use by the general public of the disputed passageway did not preclude the Stinsons from establishing an exclusive use for a prescriptive period beginning after the public stopped generally using the lane. Further, even if others sometimes used the road after 1945, it is not exclusive use itself that is the determinative factor. Instead, it is a claim to the right to use which is not dependent upon the rights of the general public which defines the exclusive use requirement. As owners of property reached by Bice Creek Lane, the Stinsons' use of the lane was different from and not dependent upon anyone else's use.

Mrs. Bobo also argues that the Stinsons did not establish exclusive use because they did not claim such a use but instead believed the lane was a public road. The Stinsons' belief as to the basis

for their claim does not change its legal status. The Stinsons and their parents before them used the lane and thereby asserted a right to use it.

The use and enjoyment which will give rise to an easement by prescription is substantially the same in quality and characteristics as the possession required to establish title by adverse possession, in that both must be open, continuous, exclusive and adverse. *House*, 48 Tenn. App. at 345, 346 S.W.2d at 447. Therefore, judicial interpretation of the character of the requirements of adverse possession is relevant to the same requirements in the context of a prescriptive easement. In the context of adverse possession, our courts have consistently held that the intent to hold adversely to another is not required, *Lemm v. Adams*, 955 S.W.2d 70, 72 (Tenn. Ct. App. 1997), and that a mistake as to the location of a boundary line does not make the possession other than adverse, *Peoples v. Hagaman*, 31 Tenn. App. 398, 403, 215 S.W.2d 827, 829 (1948). The rule in Tennessee is that it is not necessary to show an intention to hold and claim the property adversely to the interest of the title holder. *Gibson v. Shular*, 29 Tenn. App. 166, 170-71, 194 S.W.2d 865, 866-67 (1946). "The possession, use, and dominion may be as absolute and exclusive where there is . . . no actual intention to claim adversely to anyone, as where such an intention exists. . . ." *Id.*

Accordingly, the Stinsons' and their parents' open and continuous use of the lane for access to their property is sufficient. Whether they intended to use the passageway adversely to the interests of the owner of Parcel 7.01 or under the mistaken understanding that the lane was a public road does not affect the legal consequence.

## V. Acquiescence

Mrs. Bobo's second argument is that there was no acquiescence to the Stinsons' exclusive right to use the lane by Mr. Capley or Mr. Mayo, the two previous owners of what is now Mrs. Bobo's property, during the prescriptive period. Essentially, Mrs. Bobo argues that because the Stinsons used the lane under the mistaken belief that it was a public road, they never put Mr. Capley or Mr. Mayo on notice that the Stinsons were asserting an exclusive adverse right to use the lane. Thus, neither prior landowner could have acquiesced in the exclusive adverse right.

The trial court found there was no evidence that Mr. Capley or Mr. Mayo ever attempted to control or restrict access to Bice Creek Lane and no evidence that the Stinsons asked permission from them. There is no real dispute the prior owners of Mrs. Bobo's property were aware of the Stinsons' use of the lane to access their property.

We find no requirement that an adverse user put the title holder on notice of the legal basis or source of the claimed right to use. It is the use itself that creates the duty to object. Just as a mistaken belief as to the underlying claim for the right to use does not make the use other than adverse, it also does not invalidate acquiescence to that use. Continuous use of the property of another for a long period of time will be presumed to be adverse, and that presumption may be rebutted by evidence of permission of the landowner. *Stone*, 70 S.W.3d at 87; *Star Enterprise v.*

*Warner*, No. 01-A-01-9502-CH-00036, 1995 Tenn. App. LEXIS 432 *16-*17, (Tenn. Ct. App. Jun. 28, 1995) (no Tenn. R. App. P. 11 application filed).

## VI. Conclusion

Because we find that the Stinsons proved by clear and convincing evidence all of the requirements necessary for a prescriptive easement, we affirm the decision of the trial court and remand the case for further proceedings consistent with this opinion as may be necessary. The costs of appeal are taxed to the appellant, Brenda Sue Bobo, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE