# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 22, 2016 Session

## THE RIVER OAKS, GP, ET AL. v. IOAN BUCSE, ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2014CV23     Joe Thompson, Judge**
_____

**No. M2015-02208-COA-R3-CV – Filed October 25, 2016**
_____

This property dispute involves adjacent commercial property owners. When defendants revealed their intent to erect a fence between the adjoining properties, plaintiffs sued under the theories of adverse possession, prescriptive easement, and implied easement to use a portion of defendants' property for parking, trash removal, and receiving deliveries. After a bench trial, the trial court found that plaintiffs failed to meet their burden of establishing their asserted rights over the area in dispute. Plaintiffs appeal the trial court's conclusions as to prescriptive easement and easement by implication only. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which Brandon O. Gibson, J., joined, W. NEAL MCBRAYER, J., not participating.

Peter H. Curry, Nashville, Tennessee, for the appellants, The River Oaks, GP, and Ray Morris.

Brandon R. Meredith, Gallatin, Tennessee, for the appellees, Ioan Bucse and Felicia Bucse.

## OPINION

### BACKGROUND

Plaintiffs/Appellants The River Oaks, GP ("River Oaks") and Ray Morris ("Mr. Morris," and together with River Oaks, "Appellants") and Defendants/Appellees Ioan Bucse ("Mr. Bucse") and Felecia Bucse ("Ms. Bucse," and together with Mr. Bucse, "Appellees") are adjacent commercial property owners in Hendersonville, Tennessee. Appellants' properties together make up a strip shopping center ("Shopping Strip").

Specifically, Mr. Morris owns the two westernmost "bays" of the Shopping Strip ("Morris property"), while River Oaks owns the remaining bays ("River Oaks property"). Each of the Shopping Strip's bays fronts State Highway 31E/West Main Street ("West Main Street"); i.e., West Main Street borders the Shopping Strip to the north. Each bay also has a rear door leading to a paved area on the southern side. Appellees own a parcel of land ("the Bucse property") directly south of and abutting Appellants' property. Candy Lane abuts the eastern boundary of both the River Oaks property and the Bucse property.[1]

River Oaks is a partnership consisting of Conoly Brown ("Mr. Brown") and David Hood ("Mr. Hood"). Mr. Brown and Mr. Hood each individually purchased the River Oaks property by deed[2] dated March 8, 2007, and both partners subsequently conveyed the property to River Oaks on October 4, 2013. Mr. Morris purchased the Morris property by deed dated November 2, 1978.

Harold Vandercook originally owned the parties' properties and is the common grantor in all of the parties' chains of title. On November 2, 1978, Mr. Vandercook conveyed the River Oaks property to River Oaks's predecessors-in-interest and granted them by deed a sixteen-foot non-exclusive easement "for ingress and egress and utilities" along the northern boundary of the Bucse property ("sixteen-foot deeded easement"). On that same day, by deed, Mr. Vandercook also conveyed to Mr. Morris the Morris property and granted to Mr. Morris the same sixteen-foot deeded easement "for ingress and egress and may also be used for the location of utilities provided that the same is restored."

By deed dated February 25, 1997, Mr. Morris became owner of a one-half undivided interest in the Bucse property; Mr. Vandercook retained the other one-half interest. On November 20, 1998, Mr. Morris conveyed by deed his one-half interest in the Bucse property to Appellees' predecessor-in-interest. Appellees purchased the Bucse property by deed dated March 3, 2006.

On February 11, 2014, Appellants filed a complaint and applied for a temporary injunction in the Sumner County Chancery Court ("trial court"). The complaint alleged Appellants were entitled to "use the alley at the rear of their property . . . for employee parking, trash storage, deliveries, and access to the street" because Appellees, "upon whose property the alley is located, have stated their intention to fence the alley thereby blocking [Appellants'] access." In support of their claim over this portion of the Bucse

---

[1] The parties agree that the only way to get to the northern part of the Bucse property abutting the Shopping Strip is via Candy Lane. In a pleading, Appellees contended that they own an easement over Candy Lane to access their property.

[2] All of the deeds in this cause were admitted into evidence as part of the parties' joint stipulations.

property, Appellants relied on the theories of statutory adverse possession pursuant to Tennessee Code Annotated Section 28-2-103, common law adverse possession, prescriptive easement, and easement by implication. Appellants also requested an injunction enjoining Appellees from erecting a fence blocking access to "the alley." However, Appellants never specifically defined "the alley" in the complaint but generally referred to the area as an "alleyway" or the "property in question."

On March 7, 2014, Appellees filed an answer denying Appellants' allegations that their use of a portion of the Bucse property was adverse and exclusive and opposing Appellants' application for the injunction. On March 10, 2014, the trial court issued a temporary injunction enjoining Appellees "from erecting a fence, or placing any other obstruction, on or across that portion of their property described in the [c]omplaint which is currently used by the [Appellants] for access to the rear of their adjoining property." On April 28, 2015, an agreed order was entered allowing Appellants to add an additional ground pursuant to Tennessee Code Annotated Section 28-2-104 as an amendment to their complaint.

A bench trial took place on May 26 and 27, 2015. Prior to the presentation of the proof, Appellants' counsel defined for the trial court the "area in dispute" as the area between the Shopping Strip's southern property line to a point 12.5 feet south of the Nashville Electric Service power lines ("NES power lines") located on the Bucse property. As discussed in detail, *infra*, Appellants' counsel often referred to this "area in dispute" when questioning the witnesses.

Jackie Vandercook, daughter of Mr. Vandercook and owner of property near both the Shopping Strip and Bucse property, testified on Appellants' behalf. When questioned about Appellants' use of the "area in dispute," Ms. Vandercook testified that she observed the continuous uses of parking, trash removal, and truck deliveries since the early 1970s when development of the area concluded. On cross-examination, however, Ms. Vandercook testified that she was unsure of the exact location of the boundary separating the two properties or of the location of the easement. Specifically, Ms. Vandercook was unsure whether the cars that she observed were normally parked on the Shopping Strip, within the sixteen-foot deeded easement, or beyond the sixteen-foot deeded easement further into the Bucse property. She was also unsure as to the usual location of the dumpsters and was unsure of where and how often the delivery trucks made their deliveries.

Mr. Morris testified that he had been a tenant on the Morris property since 1972 and owned the property since 1978. When questioned about Appellants' use of the "area in dispute," Mr. Morris testified that he, his tenants, and their employees continuously used the area for dumpsters, parking, and deliveries. Mr. Morris testified that he improved the "area in dispute" with gravel but was unsure whether he placed the gravel within the sixteen-foot deeded easement or whether the gravel encroached on the Bucse

- 3 -

property past the sixteen-foot deeded easement. Mr. Morris testified that his tenants usually park with "their nose up to the building" on the Morris property. On cross examination, Mr. Morris admitted that he was not familiar with the true boundary line between the Shopping Strip and the Bucse property or with the location of the sixteen-foot deeded easement. Mr. Morris was also unable to state whether the cars normally park beyond the sixteen-foot deeded easement further into the Bucse property. Mr. Morris also admitted that he neither encouraged nor directed the dumpster truck drivers to drop the dumpsters on any particular area.

Mr. Brown testified that he became a tenant in the River Oaks property in January 2003 but became an owner in 2007. Mr. Brown admitted that the River Oaks property was not landlocked and that he had access to the main road. According to Mr. Brown, he believed that the southern property line of the Shopping Strip followed the NES power lines but he did not have the property surveyed. When questioned about the improvements he made to the "area in dispute," Mr. Brown testified that he added gravel on three occasions although some gravel was already present when he purchased the River Oaks property. On a fourth occasion, however, he testified that he improved the "area in dispute" with asphalt.

Mr. Brown testified that he and his tenants used the "area in dispute" for dumpster service, parking, delivery access, and access to work on the "mechanicals." According to Mr. Brown, cars necessarily traveled beyond the sixteen-foot deeded easement into the Bucse property in order to pull into the spaces to park behind the buildings. On cross-examination, however, Mr. Brown conceded, when presented with pictures admitted as trial exhibits ("pictures"), that a car could physically make the turn off Candy Lane and park behind the River Oaks property while staying entirely within the sixteen-foot deeded easement. Mr. Brown also admitted that he was unsure whether the dumpsters were placed within or beyond the sixteen-foot deeded easement. Mr. Brown agreed that the pictures accurately represented the way cars were usually parked and that most of the cars were parked either on the Shopping Strip or within the sixteen-foot deeded easement. Mr. Brown testified that on February 18, 2011, a restaurant became a tenant of the River Oaks property and that parking began to increase in the "area in dispute" since the restaurant opened.

Mr. Brown testified that he was only present at the River Oaks property two to three times per week for thirty to forty-five minutes each time. Mr. Brown admitted that the standard leases that his tenants sign contain no provision dictating where they should park or where they should place their dumpsters. According to Mr. Brown, his tenants informed him of the no trespassing signs and of orange cones and rope blocking the "access point off Candy Lane." When Mr. Brown learned that Appellees intended to erect a fence blocking off access to the "area in dispute," Appellants filed suit.

Mr. Bucse testified that he had been using the Bucse property for storage and parking tractor trailers in connection with his trucking business since 2011. In addition, Mr. Bucse testified that he cut the grass and, about a year before trial, improved his property with 40,000 pounds of gravel. According to Mr. Bucse, Appellants' tenants asked him for permission to level a hole in the "area in dispute" about six or seven years prior to trial and that he granted them permission.

Mr. Bucse agreed that since the restaurant's opening in 2011, traffic in the "area in dispute" increased. Due to the increased traffic to this area, Mr. Bucse wished to fence the Bucse property to secure from trespassers the goods stored in the trailers, which include refrigerated items. Mr. Bucse testified that he was present on the Bucse property every day since he began his trucking business to check on the refrigerated goods stored in the trailers. Mr. Bucse testified that he had not seen any dumpsters on the Bucse property. On cross-examination, when questioned about whether he observed Appellants' uses of the "area in dispute," Mr. Bucse admitted that he sometimes would observe cars parking on the "area in dispute" and that he was aware that dumpster trucks and delivery trucks frequent the area. However, Mr. Bucse testified that he never made any complaints prior to 2011 because parking had not been an issue prior to the restaurant's opening.

In lieu of closing arguments, the trial court requested that the parties submit proposed findings of fact and conclusions of law. On July 30, 2015, the trial court issued a memorandum opinion and order dismissing Appellants' complaint with prejudice and dissolving the temporary injunction. The trial court found that legal title to the "entire disputed area" was vested in Appellees subject to the sixteen-foot deeded easement. The trial court rejected all of Appellants' legal theories, finding that Appellants failed to clearly establish the elements of their claims.

On August 28, 2015, Appellants moved the trial court to amend and/or make additional findings by finding that the sixteen-foot deeded easement is "a valid encumbrance on [the Bucse] property" and "that [the sixteen-foot deeded easement] may be used by [Appellants] to construct new sanitary sewer lines." On October 28, 2015, the trial court partially granted Appellants' motion to amend and/or make additional findings by quoting the exact language of the deeds granting the sixteen-foot deeded easement but declined to make a finding with respect to the nature and extent of the easements because the issue was not litigated at trial. Appellants timely appealed.

### ISSUES

On appeal, Appellants abandoned their claim to the area 12.5 feet south of the NES power lines as well as the adverse possession theories. Appellants therefore raise only two issues, which we have taken, and slightly restated, from their brief:

1.    Whether the trial court erred in ruling that Appellants failed to establish their claim for a prescriptive easement for access across a portion of the Bucse property.

2.    Whether the trial court erred in ruling that Appellants failed to establish their claim for an easement by implication for access across a portion of the Bucse property.

STANDARD OF REVIEW

The trial court heard this case sitting without a jury. Accordingly, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law, and our review is de novo. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). Additionally, the trial court's findings on credibility, whether express or implicit, are entitled to great deference on appeal. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008). Where the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

DISCUSSION
Prescriptive Easement

"An easement is an interest in another's real property that confers on the easement's holder an enforceable right to use that real property for a specific use." *Vineyard v. Betty*, No. M2001-00642-COA-R3-CV, 2002 WL 772870, at *2 (Tenn. Ct. App. Apr. 30, 2002) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998)). Appellants claim such an interest in a portion of the Bucse property under a theory of prescriptive easement. "Generally, [a prescriptive] easement arises when a use . . . is adverse rather than permissive, open and notorious, continuous and without interruption, and for the requisite period of prescription." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 378 (Tenn. 2007) (citing Ralph E. Boyer, *Survey of the Law of Property* 569–70 (3d ed.1981)). "The extent of the rights matured by prescription is based upon the extent of the use during the period of prescription." *Id.* "In order to establish prescriptive easement under the common law . . . , the usage must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full [twenty years]." *Id.* at 379 (Tenn. 2007) (citing *Bradley*, 984 S.W.2d at 934); *see also Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996); *House v. Close*, 48 Tenn. App. 341, 346 S.W.2d 445, 447 (Tenn. Ct. App. 1961). "A party claiming

- 6 -

a prescriptive easement bears the burden of proving each element through clear and convincing evidence." *Hager v. George*, No. M2013-02049-COA-R3-CV, 2014 WL 3371680, at \*3 (Tenn. Ct. App. July 8, 2014) (citing *Stone v. Brickey*, 70 S.W.3d 82, 86 (Tenn. Ct. App. 2001)). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). "The evidence must create a high probability of the truth of the facts asserted, leaving the moving party with a heavy burden and a high bar for obtaining relief." *Hager*, 2014 WL 3371680, at \*3 (Tenn. Ct. App. July 8, 2014) (citing *Furlough*, 397 S.W.3d at 128).

The trial court found that Appellants presented insufficient proof as to the specific portion of the Bucse property that Appellants actually used for purposes of establishing their prescriptive easement claim. Appellants argue that they and their predecessors-in-interest adversely used the "area in dispute" for access to the rear of the Shopping Strip continuously for over forty-two years. We respectfully disagree.

As an initial matter, we note that the lack of clear evidence on the issue of Appellants' use of the Bucse property to establish their claim of a prescriptive easement is illustrated by the lack of specificity regarding exactly what property was actually in dispute. For example, Appellants' complaint described the area in dispute only as a "clearly defined alleyway." Similarly, as discussed *supra*, Appellants' counsel referred to the area in dispute at trial as "the area between [Appellants'] southern property line and the area which [Appellants] claim [they had] used which encroaches upon the deeded property line[, referring to the area 12.5 feet south of the NES power lines]."[3] From our review of the testimonial and photographic evidence, however, the area or alleyway behind the Shopping Strip includes not only the area claimed to be held in a prescriptive easement but also the sixteen-foot deeded easement undisputedly held by both the River Oaks and Morris properties. Thus, much of the testimony regarding Appellants' use of the area behind the Shopping Strip did not delineate between uses within the sixteen-foot deeded easement and uses of the Bucse property beyond the sixteen-foot deeded easement. Only uses of the Bucse property outside the sixteen-foot deeded easement will establish Appellants' adverse use of that property for purposes of Appellants' claim of prescriptive easement. *See Shealy*, 2010 WL 3504449, at \*7 (quoting *City of Whitwell v. White*, 529 S.W.2d 228, 230 (Tenn. Ct. App. 1974)) ("Easement by prescription can only be obtained where the use is adverse, not permissive."). As a result, we are unable to ascertain whether the alleged uses supporting Appellants' claimed prescriptive easement were in fact adverse to the Bucse property, as some of the uses testified to at trial appear to have occurred within the sixteen-foot deeded easement. Indeed, the pictures stipulated by the parties into evidence indicate that most of the cars were parked either on the

---

[3] As noted previously, on appeal, Appellants, abandoned their claim over the area 12.5 feet south of the NES power lines.

Shopping Strip or within the sixteen-foot deeded easement with an abundance of unused easement space. All of the dumpsters, likewise, were located in the space Appellants already have the right to use. As such, where the testimony at trial was equivocal that Appellants' claimed uses of the Bucse property actually occurred beyond the boundary of the sixteen-foot deeded easement, Appellants have failed to meet their burden to establish an adverse use of the Bucse property by clear and convincing evidence.

Even assuming, *arguendo*, that Appellants may establish their adverse use of the "area in dispute," including by the uses of third parties, such as garbage collectors, we determine that neither Mr. Morris nor River Oaks have established that they adversely and continuously used the "area in dispute" for the requisite twenty-year period. We will address each appellant and their property in turn.

### Morris Property

With respect to Mr. Morris's claim, the record shows that he was a tenant of the Morris property in 1972 and became an owner on November 2, 1978. Appellees argue that any claimed adverse use by Mr. Morris was interrupted when he owned a one-half undivided interest with Mr. Vandercook in the Bucse property from February 26, 1997, through November 20, 1998. We agree. "A party claiming ownership by adverse possession 'must sustain the proposition that the possession was in fact adverse to the true owner.'" *Shealy v. Williams*, No. E2009-00126-COA-R3-CV, 2010 WL 3504449, at *7 (Tenn. Ct. App. Sept. 8, 2010) (quoting *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App. 1983)). Thus, Mr. Morris could not have adversely used the Bucse property during this period of time because he was an owner of the property himself. *See id.* ("[B]ecause a party cannot use property adversely to his or her own interests, we agree with [p]laintiff that the [defendant's predecessor-in-interest's] simultaneous ownership of [d]efendant['s] property . . . and [p]laintiff's property . . . precluded the prescriptive period from running during the [predecessor-in-interest's] period of use."); *Haun v. Haun*, No. E2004-01895-COA-R3-CV, 2005 WL 990566, at *3 (Tenn. Ct. App. Apr. 28, 2005) (quoting *Peltz v. Peltz*, No. 01A01-9711-CH-00659, 1998 WL 717231, at *1 (Tenn. Ct. App. Oct. 14, 1998)) ("[P]ossession by one tenant in common is not adverse to another co-tenant [for purposes of establishing a prescriptive easement claim] until a disseisin[4] of the others by actual ouster."). Because of his brief period of ownership in the Bucse property, Mr. Morris's prescriptive period was interrupted. As previously discussed, in order to establish a prescriptive easement, the use of the property must be both adverse and continuous for the twenty-year period. *See Cumulus Broad.*, 226 S.W.3d at 378–79. Mr. Morris's continuous period of adverse use of the Bucse property would therefore have begun on November 20, 1998, when he no longer held an ownership interest in the Bucse property. Because the twenty-year prescriptive period

---

[4] The term "disseisin" means "[t]he act of wrongfully depriving someone of the freehold possession of property." *Black's Law Dictionary* (10th ed. 2014).

from that date does not conclude until November 19, 2018, the evidence does not establish that Mr. Morris adversely used the "area in dispute" for the requisite twenty-year period as of the date of the filing of the complaint. We therefore proceed to examine whether River Oaks established clearly and convincingly that they adversely used the "area in dispute" for the requisite twenty years.

## River Oaks Property

Likewise, River Oaks failed to establish the continuous and adverse use of the area in dispute for the requisite twenty years. The record shows that River Oaks owned its property since March 8, 2007, though Mr. Brown was a tenant as early as January 2003. Although River Oaks had not been on the property for the requisite twenty years, it may "establish the . . . prescriptive period [by] 'tack[ing]' on the adverse use of [its] predecessor's title." *Gore v. Stout*, No. M2006-02111-COA-R3-CV, 2008 WL 450597, at *6 (Tenn. Ct. App. Feb. 19, 2008) (citing *Laurel Valley Prop. Owners Ass'n, Inc. v. Hollingsworth*, No. E2003-01936-COA-R3-CV, 2004 WL 1459404 at *8 (Tenn. Ct. App. June 29, 2004)). "Tacking requires that the combined periods be successive, that each possession must meet the elements of prescriptive easement, and that the possessions be in privity." *Hollingsworth*, 2004 WL 1459404 at *8 (quoting *Thompson v. Hulse*, E1999-02474-COA-R3-CV, 2000 WL 124787, at *3 (Tenn. Ct. App. Jan. 26, 2000)). No testimony was presented by any of River Oaks's predecessors-in-title, however. To the extent that River Oaks relies on the use of the "area in dispute" prior to 2003, it relied upon Mr. Morris's and Ms. Vandercook's testimony regarding the continuous use of the area in dispute, as Mr. Brown himself would not have had personal knowledge of any use of the "area in dispute" by the River Oaks property prior to that time.

As noted above, however, the evidence presented by these witnesses was ambiguous at best. First, as previously discussed, throughout the trial court proceedings the parties failed to effectively delineate between uses of the Bucse property outside the sixteen-foot deeded easement and uses of the area that also included property to which River Oaks had the right to use, such as its own property and the sixteen-foot deeded easement. The testimony of the witnesses failed to clarify whether River Oaks's use of the area behind the Shopping Strip routinely included unauthorized use of the Bucse property. For example, although Ms. Vandercook testified that she observed continuous use of the area in dispute for parking, trash removal, and truck deliveries, she was unable to determine which portion of the Bucse property was actually used by the River Oaks property for these purposes. Additionally, the only portion of Mr. Morris's testimony referring to the River Oaks property was that the River Oaks tenants "parked all around wherever they needed to." Thus, even if River Oaks did in fact use the "area in dispute" for the requisite twenty-year period, the testimonial evidence in the record regarding which portion of the Bucse property was actually used, as discussed *supra*, is equivocal at best. Consequently, we cannot conclude that the evidence preponderates against the trial

court's finding that River Oaks failed to show that they and their predecessors-in-title continuously and adversely used the "area in dispute" for the requisite twenty years by clear and convincing evidence.

## Easement by Implication

Appellants next take issue with the trial court's finding that an easement by implication was not established. "An easement by implication arises upon severance of a single piece of land into separately owned parts as an inference of the intention of the parties to the conveyance." ***Cellco P'ship v. Shelby Cnty.***, 172 S.W.3d 574, 588–89 (Tenn. Ct. App. 2005) (quoting ***Barrett v. Hill***, No. 01A01-9806-CV-00295, 1999 WL 802642, at *2 (Tenn. Ct. App. Oct. 7, 1999)). There are two types of easement by implication: easement implied by prior use and easement created by necessity. ***Id.*** at *9. "Both are implied, both arise from a conveyance, both hinge on a finding of necessity." ***Id.***

From what we can discern, Appellants appear to be arguing that an easement by implication is necessary. Appellants' brief contains very little argument regarding this contention. Rather, their argument provides only that:

> [Appellants] also claim an easement by implication across the same area. [Appellants] are entitled to such an easement because the facts show that the same is reasonably necessary and essential for the beneficial enjoyment of their property. *See* ***Johnson v. Headrick***, . . . 237 S.W.2d 567 ([Tenn. Ct. App.] 19[4]8). The [trial] court rejected this claim, holding that the [Appellants] could not establish an easement by implication because such an easement was incompatible with the 16[-]foot easement of record, citing ***Cole v. Dych***, 535 S.W.2d 315 (Tenn. 1976). ***Cole***, however, does not appear to support this holding.

We agree with Appellants that the Tennessee Supreme Court's decision in ***Cole*** is inapposite to the easement at issue here. As Appellants' argument above makes clear, they claim an easement by implication and indicate that such an easement is appropriate because their use of the Bucse property is reasonably necessary to the use and enjoyment of their own property. In ***Cole***, however, the Tennessee Supreme Court expressly stated that the claimed easement in that case did not "deal with a way of necessity or easement by implication." ***Cole***, 535 S.W.2d at 318. Rather, the Tennessee Supreme Court held that the easement at issue in that case was "acquired by dedication." ***Id.*** Still, regardless of the trial court's improper reliance on ***Cole***, we conclude that the trial court correctly declined to find an easement by implication in this case.

In order to prevail on a claim of easement by implication, the following elements must be shown:

(1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Another essential is sometimes added to these—namely, that the servitude be continuous, as distinguished from temporary or occasional.

*Cellco P'ship.*, 172 S.W.3d at 589 (quoting *Johnson*, 237 S.W.2d at 570 (citations omitted)). "'An implied easement . . . should only arise where it is of such necessity that we may presume it was within the contemplation of the parties to a conveyance.'" *Id.* at 589 (quoting *The Pointe, LLC v. Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 478 (Tenn. Ct. App. 2000)). Unlike a prescriptive easement, the elements of an easement by implication need only be proved by a preponderance of the evidence. *See Newman v. Woodard*, 288 S.W.3d 862, 866 (Tenn. Ct. App. 2008). Here, at least one essential element is lacking: the necessity of the easement.

As noted above, Appellants' brief simply fails to address how an extension of the sixteen-foot deeded easement would be "necessary and essential for the beneficial enjoyment of their property." Indeed, upon our review of the record, it is undisputed that Appellants have both the ability to access the front of their property from West Main Street and the ability to access the rear of their property via Candy Lane while staying entirely within the sixteen-foot deeded easement. *See Cellco P'ship.*, 172 S.W.3d at 589 (holding that an implied easement only arises where its use is necessary). We therefore conclude that the evidence does not preponderate against the trial court's finding that no easement by implication was established.

## CONCLUSION

Based on the foregoing, the judgment of the Sumner County Chancery Court is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants, The River Oaks, GP and Ray Morris, and their surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE