IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2011 Session

## CAROL PHILLIPS v. TODD SHRADER

**Appeal from the Chancery Court for Anderson County**
**No. 09CH0635      William E. Lantrip, Chancellor**

**No. E2010-02339-COA-R3-CV-FILED-DECEMBER 14, 2011**

This is a dispute between two neighbors over the use of land. The plaintiff, Carol Phillips, charged the defendant, Todd Shrader, with trespass.[1] She sought an injunction and damages, along with removal of encroaching structures. The trial court dismissed Ms. Phillips's action, finding it barred by Tenn. Code Ann. § 28-2-103. Ms. Phillips appeals. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

J. Stephen Hurst, LaFollette, Tennessee, for the appellant, Carol Phillips.

Philip R. Crye, Jr., Clinton, Tennessee, for the appellee, Todd Shrader.

## OPINION

## I. BACKGROUND

The parties own adjacent tracts of land in Anderson County, Tennessee, near Lake City. Both tracts were formerly owned by Leonard T. Carden ("Leonard C."). In 1993, Leonard C. had a survey prepared by George A. McGrew, Jr., and divided his property into two tracts. The following year, in December 1994, he conveyed a lot containing 1.59 acres

---

[1]Ms. Phillips also sued Pemberton Truck Lines, Mr. Shrader's employer. She voluntarily dismissed the suit against the employer on June 29, 2009.

("the Back Lot") to his brother and sister-in-law, Bruce and Nancy Carden (collectively "the Cardens"). Leonard C. retained ownership of a smaller lot ("the Front Lot") containing 0.58 acres where his residence was located. He continued to reside on the Front Lot until his death in May 2008. Mr. Shrader acquired the Front Lot from the devisees of Leonard C. in November 2008. Ms. Phillips acquired the Back Lot from the Cardens in a February 2000 deed.[2]

Both tracts adjoin a county road now known as Mountainside Lane.[3] Access to Mountainside Lane for both tracts is along a common drive known as Ponderosa Lane. The surveys of record reveal that Ponderosa Lane meanders in and out of the Back Lot and the property of Ms. Phillips located adjacent to it. While the ownership of the land over which Ponderosa Lane runs has changed over the years, the location of the road has not been altered.[4]

Mr. Shrader's tract contains a one-story residence with an attached carport/garage. The deeds by which he obtained his property both describe a tract containing 2.75 acres -- the total amount of property originally held by Leonard C.[5] Apparently, neither of the deeds contains an exception for the Back Lot that was conveyed out of the 2.75 acres when Leonard C. sold part of the property to the Cardens in 1994.

In his answer and counterclaim to Ms. Phillips's lawsuit, Mr. Shrader admitted that the common boundary was located approximately where Ms. Phillips contended, that the encroachments complained of had existed for many years, and that a road known as Ponderosa Lane was located on Ms. Phillips's property that provided access to both tracts of land. He pled the bar of the applicable statute of limitations contained in Tenn. Code Ann. § 28-2-201, et seq. Mr. Shrader alleged that the area located between the surveyed boundary line and Ponderosa Lane had been used adversely by him and his predecessors in title for over seven years.

During her testimony at the trial held on July 6, 2010, Ms. Phillips testified that her

---

[2]Ms. Phillips owns other property to the north and east of the Back Lot, which she acquired from Ayers Ltd. Partnership.

[3]Formerly called Duff Road.

[4]Leonard C. conveyed away to the Cardens his ownership of part of Ponderosa Lane and severed part of his yard and the corner of his residence where his carport/garage was located.

[5]We note that 1.59 acres and 0.58 acres equals 2.17 acres. The remaining 0.58 acres from the original tract of land has not be addressed in this appeal.

property line passes through the "lean-to garage" attached to Mr. Shrader's house. She acknowledged that the carport/garage existed when she moved to her property in 1993 or 1994. She claimed, however, that the driveway leading into the carport/garage did not exist at that time and that Leonard C. parked his vehicle near Mountainside Lane. Ms. Phillips asserted that she and her husband built Ponderosa Lane and that she constructed the driveway from Ponderosa Lane to the carport/garage. According to Ms. Phillips, Leonard C. used Ponderosa Lane and the driveway to access his carport/garage with her verbal permission until he died.

In regard to Mr. Shrader's use of the property, Ms. Phillips testified that he moved into the former residence of Leonard C. "a little time after" Leonard C. died, "like three or four months after." She complained that Mr. Shrader was constantly walking and driving over her property. Ms. Phillips asserted that Mr. Shrader had trespassed by having an outbuilding and a large propane tank on her property and by driving a Pemberton Truck Lines tractor-trailer over her land.

Bruce Carden ("Bruce C.") indicated that he is not an acquaintance of Mr. Shrader and could only recall meeting him once before Mr. Shrader moved into Leonard C.'s former home. He stated that he had been familiar with the land involved in this action all of his life, having been raised in the area. He testified that he and his wife built a house on the Back Lot, where they lived for about two and one-half years until the house burned down after being struck by lightening. In 2000, the Cardens sold the Back Lot to Ms. Phillips and her then husband.[6]

According to Bruce C., the carport/garage on his brother's house had existed for at least 40 years, occupying the same footprint on the ground as it did when it was constructed. He noted that the only change in its appearance since it was built was that Leonard C. had enclosed the sides to keep the rain out. Bruce C. asserted that the carport/garage had always been used to park vehicles. He further noted that Ms. Phillips's testimony that Leonard C. parked his vehicles beside Mountainside Road was not truthful.

Additionally, Bruce C. explained that the gravel driveway to the carport/garage had existed as long as he could remember, or for 50 years or better, and that it was used continuously all those years to access Leonard C.'s house. He recalled playing on these roads as a child. He observed that the road now known as Ponderosa Lane had been used for years to access multiple residences, including his house that burned down, Ms. Phillips's residence, the Leonard C. house, and a mobile home that his brother rented out for about 25 years (located behind the Cardens' house).

---

[6]Mr. Phillips conveyed his interest in the Back Lot to his former wife upon their divorce.

Bruce C. testified that during the time that the Cardens owned the Back Lot, Leonard C. neither sought nor was given permission to use Ponderosa Lane or the driveway. He noted his full awareness that part of Leonard C.'s carport/garage encroached across the boundary and that his brother's use of the driveway likewise encroached. Despite this knowledge, however, no action was taken to stop the encroachments.[7]

According to Bruce C., the masonry barbecue on the property was about 30 years old; the propane tank that serviced the house had been there eight years or more; and a telephone pole located at the corner of the carport/garage bearing a ham radio antennae had existed for about 15 years. Bruce C. testified that the area between the line that bisected the carport/garage and the edge of Ponderosa Lane was part of the yard for the house and was used and maintained by Leonard C. continuously while he was alive.

Nancy K. Carden ("Nancy C.") likewise noted that the driveway to the area of the carport/garage had existed about 45 years. She related that the structure was built about 1969 or 1970, while the Cardens were living in California, because she first remembered seeing it when they came back for a visit. She discussed the mobile home that was located behind where she and her husband built their home, observing that it was lived in continuously for 20 or 25 years and was accessed from the county road by Ponderosa Lane. She recalled that Leonard C. always used Ponderosa Lane to access his house. According to Nancy C., no one ever sought permission from anyone to use Ponderosa Lane.

At the conclusion of the trial, the trial court noted from the bench that the testimony of the Cardens was found to be credible. It was determined that Ponderosa Lane and the driveway into the carport/garage on the Front Lot had existed and been used as such for over 30 years, that the barbecue pit had existed for 35 to 40 years, and that the propane tank had been placed and used by Leonard C. for about eight years. In the written opinion, the trial court noted as follows:

> I have reviewed the briefs filed by the parties and authorities cited. I am of the opinion that T.C.A. 28-2-103 precludes this action brought by the plaintiff.

> The plaintiff acquired the property from Bruce and Nancy Carden in 2000.

_____

[7]Bruce C. explained that before the county would issue him a building permit, a strip 30 feet in width out to the county road was required. In order to mark the 30 feet, his brother placed a pin inside the carport/garage to mark where the line passed. The 1993 McGrew survey for the Back Lot therefore severed off part of Leonard C.'s yard and bisected his carport/garage. Bruce C. testified that it was his understanding at the time he purchased the Back Lot that he bought only an easement over the disputed strip of land and that he could not do anything with it.

The Cardens had acquired this property from Leonard Carden in 1994. At the time of conveyance the carport/garage was already in existence and a wagon wheel[8] was used as a marker insider the structure to signify the boundary line of the property acquired by Bruce and Nancy Carden. Obviously the structure was there and encroached upon the land conveyed. There was also testimony which I find convincing that Leonard Carden used the road, driveway and carport from and after this conveyance in 1994.

I also find that Leonard Carden used the land in front of his home which is not included in his deed for the location of a barbeque pit, a propane tank and further maintained the area.

The testimony of both Bruce and Nancy Carden confirm that they were aware of the adverse use of their property but took no action. This use of the property continued from 1994 until Leonard Carden's death in 2008.

The plaintiff acquired her property in February, 2000 and the acts of Leonard Carden continued with respect to the use of the plaintiff's land. Indeed the proof was clear that this use of the driveway and garage had been continuing for greater than 20 years. There is no evidence whatsoever of any permission sought from the plaintiff or granted by the plaintiff. As previously noted I found the testimony of the plaintiff's predecessors to be credible. Their testimony confirms the use of the disputed area by Leonard Carden during his life.

I also find that there has been a tacking of possession from Leonard Carden, his estate and the possession of the defendant. Leonard Carden could not have possessed against himself so that the time calculation would by necessity date from 1994.

Based upon these findings, the provisions of T.C.A. 28-2-103[9] would bar this action. The defendant did plead the provisions of section 28-2-101 et seq. Included is the reference to section 103.

---

[8]An axle.

[9]The consequence is that while Ms. Phillips retains title to the disputed strip, she is barred from bringing an action to eject Mr. Shrader and if the adverse possession continues for twenty years, Mr. Shrader will obtain title by prescription. *See Shearer v. Vandergriff*, 661 S.W.2d 680, 682 (Tenn. 1983).

Ms. Phillips timely perfected this appeal.


## II. ISSUES

We restate the issues presented by Ms. Phillips as follows:

1. The trial court erred in finding that the complaint was barred by Tenn. Code Ann. § 28-2-103.

2. The trial court erred in finding that Tenn. Code Ann. § 28-2-103 is applicable because Mr. Shrader failed to plead the statute.


## III. STANDARD OF REVIEW

Our review of this case is de novo upon the record, accompanied by a presumption of correctness of the findings of fact by the trial court, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).


## IV. DISCUSSION

### A.

Ms. Phillips contends that the trial court erred in dismissing her action based on the statute of limitations, Tenn. Code Ann. § 28-2-103, which bars ejectment of an adverse possessor after seven years of continued, open, and notorious use and possession.

Tenn. Code Ann. § 28-2-103 provides as follows:

**28-2-103. Seven-year period runs from time right accrued – Extent of possession. –** (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to

extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Tenn. Code Ann. § 28-2-103 (2000).

The quoted statute protects an adverse holder without color of title. *See Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 377 (Tenn. 2007); *Shearer v. Vandergriff*, 661 S.W.2d 680, 682 (Tenn. 1983). In order to establish a defense to the recovery of land under this statute, the possessor must show that the possession was actual, open, notorious, exclusive, and hostile for the entire seven year period. *See Stearns Coal & Lumber Co. v. Kitchen Lumber Co.*, 182 S.W.2d 4, 7 (Tenn. Ct. App. 1944).[10] Under this statute, the party who adversely possesses property for seven years obtains a possessory right in the property. "This possessory right, or defensive title as it is sometimes called, continues as long as the actual possession is maintained." *City Nat'l Bank and Trust Co. v. City of Knoxville*, 11 S.W.2d 853, 854 (Tenn. 1928). The statute does not vest title, but it may be used defensively by the adverse holder. *See Moore v. Brannan*, 304 S.W.2d 660 (Tenn. Ct. App. 1957); *Lemm v. Adams*, 955 S.W.2d 70, 73 n. 1 (Tenn. Ct. App. 1997). This possessory right is complete by reason of the statute and is unrelated to title. *City Nat'l Bank*, 11 S.W.2d at 854. The possessory right created by this statute affords the adverse holder the right to sue for trespass or injunctive relief to prevent repossession. *See Tuggle v. Southern Ry. Co.*, 204 S.W. 857 (Tenn. 1918). This statute creates a defensive right in the adverse possessor against any person, including the title holder, seeking to dispossess the adverse possessor. *See Foster v. Hill*, 510 S.W.2d 520, 522 (Tenn. Ct. App. 1973). However, the statute protects an adverse holder only as to that part of the land held adversely. *See Shearer*, 661 S.W.2d at 682.

The character of the possessory acts with respect to the disputed strip of land which support Mr. Shrader's defensive title include the use and maintenance of the carport/garage attached to the house, the use of the driveway into the carport/garage, the use of a barbecue pit, the use of a propane tank, and the use of the yard including mowing it and maintaining flowers and shrubs. *See Peoples v. Hagaman*, 215 S.W.2d 827, 829 (Tenn. Ct. App. 1948) (holding that "the construction of a garage and the grading and using of a well-defined driveway are at least as effective in giving notice to the true owner of an adverse use of his property as the construction of a fence").

---

[10]The character of the possessory acts that are sufficient to place the title holder on notice of an adverse claim are the same under the statute as under the common law of adverse possession. *See Wilson v. Price*, 195 S.W.3d 661, 666-67 (Tenn. Ct. App. 2005).

## TACKING

The procedure by which successive possessions or uses are allowed to be combined to establish the requisite adverse period is called tacking. The tacking of successive possessions is more restrictive under Tenn. Code Ann. § 28-2-103 than under common law adverse possession:[11] pursuant to the statute, the successive possessions must be connected by privity of estate, and "a transfer of the possessory right by grant, inheritance, devise, or contract, verbal or written." *Erck v. Church*, 11 S.W. 794, 797 (Tenn. 1889). "The mere fact of successive possessions appearing, and nothing more, will not constitute such privity." *Id.* Ms. Phillips contends that Mr. Shrader cannot tack the possession of Leonard C. because the surveys of record reveal that the land in dispute is enclosed by her deed; thus, she argues that there is no privity between Mr. Shrader and his predecessors in title.

Significantly, the deeds by which Mr. Shrader took title to his property also enclose the disputed strip of land. His deeds enclose not only the Front Lot where his residence is located, but also the Back Lot that contains the disputed strip of land. The deeds under which Mr. Shrader was conveyed the Leonard C. property describe the original boundary without any reservation for the Back Lot previously conveyed. The first three courses and distances on Mr. Shrader's deed correspond to the three lines representing the northeast and northwest boundaries of the Back Lot. These same courses and distances correspond to the three lines representing the southwest and southeast boundaries of Ms. Phillips's property as shown on the survey filed. Accordingly, while Mr. Shrader's deeds would not convey fee title to the disputed strip because of the prior conveyance of the Back Lot, his deeds establish privity with his predecessors in title because the deeds enclose the disputed strip of land that was used and occupied by Leonard C. *See Peoples,* 215 S.W.2d at 830 (a deed creates privity between the grantor and grantee as to land described in the deed). Thus, the period of possession and use by Leonard C. could be tacked to that of Mr. Shrader.

## PERMISSIVE POSSESSION

Ms. Phillips contends that the use and possession by Leonard C. was permissive. She claims that no driveway existed for the use of Leonard C. until she constructed one for him

---

[11]Under common law adverse possession of twenty years, in contrast, a presumption of a grant is employed to dispense with the requirement of legal privity in order to tack successive possessions. *See Ferguson v. Prince*, 190 S.W. 548, 552 (Tenn. 1916). "The doctrine on which this presumption rests is that, where one has remained in uninterrupted and continuous possession of land for twenty (20) years, a grant or deed will be presumed."

in the 1990s and permitted him to use it. The survey plats, however, do not support her claim.

The 1993 McGrew survey dividing the Leonard C. property was merely a boundary survey and did not locate any existing structures. The Jerry Crutchfield survey of Ms. Phillips's land located adjacent to the Back Lot was made in January 1994, shortly after the December 1993 McGrew survey, and reveals the existence of the road now known as Ponderosa Lane along the southwest boundary of Ms. Phillips's property. During her testimony, Ms. Phillips admitted that the road noted on the survey was the same road as Ponderosa Lane. The November 1995 Crutchfield re-survey of the Back Lot for the Cardens displays the encroaching corner of the Leonard C. carport/garage and the driveway leading from Ponderosa Lane into the carport/garage. The testimony of the Cardens, found credible by the trial court, rejected as untruthful Ms. Phillips's claim that she constructed Ponderosa Lane and the driveway to Leonard C.'s carport/garage and that all use and possession had been pursuant to her permission. The trial court found no credible evidence of permissive use.

A possession is hostile within the meaning of the law of adverse possession where one "claims to hold the possession as his, against the claims of any other." *Hightower v. Pendergrass*, 662 S.W.2d 932, 937 (Tenn. 1983); *Wilson*, 195 S.W.3d at 667. What the law requires is that "the possessor must use the property in a manner consistent with its nature and purpose and in such a way as to give notice to the rightful owner that another is asserting dominion over his property." *Wilson*, 195 S.W.3d at 667. The owner must have knowledge of the adverse claim, or it must be so open and notorious that he will be presumed to have notice of the claim. *Kirkman v. Brown*, 27 S.W. 709, 710 (Tenn. 1894). The possession must be of such a character as to leave no doubt of claim of ownership by adverse possession and to give notice to the public of the possession and the claim. *Cooke v. Smith*, 721 S.W.2d 251, 254 (Tenn. Ct. App. 1985). Whether the possessor has treated the property in such a manner as to establish adverse possession is largely a question of fact.

The record contains no evidence of permission, except the self serving statements of Ms. Phillips. During the time the Cardens owned the Back Lot, permission was neither offered nor accepted. Leonard C. and Mr. Shrader used the disputed strip of land as if they owned it from 1994 to the present. The character of their use and possession is hostile under the law. The record fully supports the finding of the trial court that there was no credible evidence of permissive use.

**HIATUS**

Ms. Phillips also contends that there was a hiatus, or break, between the possession of Leonard C. and that of Mr. Shrader that breaks the continuity of the adverse possession. She claims that after the death of Leonard C., there was a period of five months when the adverse use was discontinued before Mr. Shrader began to reside on the property. She testified that Mr. Shrader moved into the residence on the Front Lot "a little time after" Leonard C. died, "like three or four months after."

The mere non use of property is not evidence of abandonment of possession; instead, there must be either some evidence of an intention to abandon, or at least an absence of all evidence indicating a substantial and live claim of ownership. *See Hornsby v. Davis*, 36 S.W. 159, 163 (Tenn. Chan. App. 1895). "A temporary break or interruption that is not of unreasonable duration does not destroy the continuity of the adverse claimant's possession." 3 Am. Jur. 2d *Adverse Possession* § 90 at 162. It is generally recognized that "the continuity of possession by a claimant under adverse possession is not affected by a temporary and reasonable vacancy of the premises occurring between the time of a conveyance by the adverse holder and the entry into possession of the purchaser or tenant." 3 Am. Jur. 2d *Adverse Possession* § 91 at 163.

We do not find that the short period of non-residence to allow the heirs to settle an estate equates into evidence of a break of possession. The short period of time between the death of Leonard C. and the possession of the property by Mr. Shrader did not constitute a hiatus in the continuity of the adverse possession.

Both Leonard C. and Mr. Shrader have possessed and used the carport/garage, driveway, and yard in the disputed strip of property as if they owned it. As argued by Mr. Shrader, this use and possession meets the hostility element within the law of adverse possession. We find that Mr. Shrader is entitled to the protection of Tenn. Code Ann. § 28-2-103. For purposes of the case before us, Tenn. Code Ann. § 28-2-103 bars the right of Ms. Phillips to recover the property that has been adversely held for more than seven years. *Teeples v. Key*, 500 S.W.2d 452, 456 (Tenn. Ct. App. 1973).

B.

Mr. Shrader averred as an affirmative defense the bar of "the applicable statute of limitations as set forth in T.C.A. Section 28-2-101, et seq." In the counterclaim, Mr. Shrader

-10-

averred "that the encroachments, including without limitation, the corner of his residence, the propane storage tank, masonry barbecue grill, yard and driveway have been used exclusively, actually, adversely, continuously, openly and notoriously by the counter-plaintiff and his predecessors in title under color or assurance of title for more than seven years next preceding the filing of this action and that counter-plaintiff acquired title to the area of encroachment by adverse possession . . . ." At the conclusion of the trial, counsel for the parties argued and filed briefs regarding the applicability of Tenn. Code Ann. § 28-2-103. The court found that this statute of limitation was included in the affirmative defense pled in Mr. Shrader's answer and counterclaim.

Mr. Shrader asserts that the language in his pleading meant that he pled the bar of Tenn. Code Ann. § 28-2-101 and the following sections, which included § 28-2-103. Ms. Phillips contends that the language is couched in terms of color or assurance of title and acquired title. She notes that these terms are associated with Tenn. Code Ann. § 28-2-101, in that actions relying on Tenn. Code Ann. § 28-2-103 are not based on ownership.

From the language in the answer and counterclaim, it appears that Mr. Shrader was defending based upon his possessory rights and the statute of limitation. "Et seq." is an abbreviation of the Latin terms "*et sequentes*" or "*et sequentia*," meaning "and the following." Black's Law Dictionary (Rev. 4th Ed. 1968) at 653. Thus a reference to "T.C.A. Section 28-2-101, et seq." means "T.C.A. Section 28-2-101 and the following statutes."

While Mr. Shrader could have set out separately the sections of the adverse possession statutes, we find that the trial court properly found that the defense of Tenn. Code Ann. § 28-2-103 was sufficiently stated.


## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Carol Phillips. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
JOHN W. McCLARTY, JUDGE

-11-